Michael O. Hardison
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910
mhardison@evw.com

UNITED STATES DISTRICT COURT
-------------------------------------------------------------x
SIBEL SHIPPING LTD.,

                      Plaintiff,

    -against-

KULBERG FINANCES INC.,
AGROSERVICE LTD. UKRAGROIMPEX LTD.,
and INTERBULK TRADE LLC,

                      Defendants.
-------------------------------------------------------------x

07 Civ. 11216 (LAK)
ECF CASE

IPEK DECLARATION

       Bulend Ipek, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

       1.   I am the Managing member of Defendant, Interbulk Trade LLC ("Interbulk"), which has an office located at 6100 Neil Road, Suite 500, Reno, Nevada 89511, U.S.A. I have worked for Interbulk for two years and occupied my present position for two years. I am accordingly authorized by Interbulk to make this declaration.

       2.   I make this declaration in support of the application by Interbulk for an order dismissing the Verified Complaint and the Attachment Order as against Interbulk.

       3.   The contents of this declaration, save where otherwise stated, are derived from

my own personal knowledge. The contents are true to the best of my knowledge and belief. I am familiar with the facts set forth in this declaration.

4. Interbulk is a Nevada Limited Liability Corporation with a principal place of business in Istanbul Turkey.

5. Interbulk is in the business of international trading of grains, oilseed, and other bulk feed raw materials.

6. Interbulk is not now and never has been a resident or domicile of the State of New York, Interbulk is not now and never has been licensed or authorized to do business in the State of New York, Interbulk is not now transacting and never has transacted any business in the State of New York, Interbulk never has had any customers in the State of New York, and Interbulk has not otherwise voluntarily subjected itself to the jurisdiction of the State of New York. Interbulk does not and never has had any office or agents in the State of New York. Interbulk does not maintain and never has maintained any bank accounts, plants, warehouses or owned property of any kind in the State of New York. Interbulk does not have and never has had any employees, salesmen, or agents in the State of New York in connection, directly or indirectly, with the transaction of its business. Interbulk does not maintain any mailing address or telephone listing in the State of New York. In short, Interbulk has no contacts whatsoever with the State of New York.

7. I turn now to the cargo carried aboard the M/V MY SHIP on the voyage at issue in this proceeding.

8. On October 26, 2007, Interbulk entered into a contract of sale with Kulberg Finances, Inc. ("Kulberg"), whereby Kulberg agreed to sell and Interbulk agreed to buy, 2,400 metric tons of Ukrainian sunflower seed extraction meal in bulk (the "Kulberg/Interbulk sale contract")(a true and correct copy of the Kulberg/Interbulk sale contract is attached as Exhibit 1). The Ukrainian sunflower seed extraction meal in bulk (the "cargo") was to be shipped from a Ukrainian port during the period October 27 - November 7, 2007. The cargo was to be shipped aboard the M/V MY SHIP.

9. On October 26, 2007 (i.e., the very same day), Interbulk entered into a contract of sale with Onallar Yem San Ve Tic Ltd Sti ("Onallar"), whereby Interbulk agreed to sell and Onallar agreed to buy, the cargo (the "Interbulk/Onallar sale contract")(a true and correct copy of the Interbulk/Onallar sale contract is attached as Exhibit 2). The Interbulk/Onallar sale contract provided that the cargo was to be shipped from a Ukranian port during the period October 27 - November 5, 2007.

10. The cargo was loaded aboard the M/V MY SHIP and bills of lading covering the cargo were issued on October 29, 2007 ("Bill of Lading Nos. 1 and 2")(true and correct copies of Bill of Lading Nos. 1 and 2 are attached as Exhibit 3). Bill of Lading Nos. 1 and 2 indicated the cargo was loaded at Mariupol, Ukraine for discharge at Bandirma, Turkey. Bill

of Lading Nos. 1 and 2 indicated the shippers of the cargo were Agroservice Ltd. ("Agroservice") and Ukragroimpex, Ltd. ("Ukragroimpex") on behalf of Interbulk.

11. I must emphasize at this point that Interbulk was not the shipper of the cargo. Rather, Agroservice and Ukragroimpex were the shippers of the cargo. Remember, at the point in time when the bills of lading were issued Interbulk had already entered into a contract for the sale of the cargo to Onallar.

12. The bills of lading state that the cargo was shipped "on behalf of Interbulk" because Turkish customs do not accept third party documents. The cargo and the shippers of the cargo (Agroservice and Ukragroimpex) are of Ukrainian origin but the seller of the cargo (Interbulk) is of a different origin (U.S.A.). The name of Interbulk appears after the names of the actual shippers to make the link for Turkish customs between the cargo, the shippers of the cargo and the sellers of the cargo. This is a standard business practice.

13. I note that, in its Verified Complaint (see Paragraph 9), Sibel Shipping states that it entered into two maritime contracts with Interbulk for the carriage of the cargo. I can unequivocally state that Sibel Shipping and Interbulk never entered into any maritime contracts for the carriage of the cargo. There was no reason to do so. Interbulk had already entered into a contract for the sale of the cargo to Onallar prior to its carriage aboard the M/V MY SHIP. Sibel Shipping therefore has no contractual cause of action against Interbulk.

14. No assets of Interbulk have been restrained but I have been advised that assets of Kulberg in the full amount of Sibel Shipping's claim for $142,500.00 have been restrained by Bank of New York in connection with these proceedings.

15. Finally, without prejudice to the point that Sibel Shipping has no cause of action as against Interbulk, Interbulk in any event has a good defence to Sibel Shipping's claim because false bills of lading were issued to the knowledge of Sibel Shipping and with its consent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on   09 January 2008

Bulend Ipek

# IPEK DECLARATION
# EXHIBIT 1



**VELES-AGRO**

100, 146/2 Lustdorfskaya rd.,
65113, Odessa, Ukraine
tel./fax:+38 (0482) 34 83 95
e-mail: victor_korobko@eurocom.od.ua

Contract # 358.071026

Concluded on 26th of October, 2007 in Odessa, Ukraine between:

SELLER: **KULBERG FINANCES, INC**
15 East North Street, Dover
DE 19901, USA

BUYER: **INTERBULK TRADE LLC.**
6100 Neil Road, Suite 500
Reno Nevada 89511, U.S.A

Quantity:    2400 metric tons 10% more or less in sellers option and at contract-price.

Commodity:   UKRAINIAN SUNFLOWER SEED EXTRACTION MEAL IN BULK, crop 2007, sound, fair, loyal and merchantable quality, with following specifications:

Protein is basis 35% min.34%.
Allowances non-receiprocal 1:1.
Fiber max 20%
Moisture max. 12,0%

Shipment:    October 27 / November 7, 2007 latest, both dates included; last B/L-date on vessel to govern. To suit loading 1 hold of M/V "Myship" or sub.

Price (sunflower seed expeller): USD 287,50 (Three hundred eighty seven and a half) US dollars metric ton CIFFO (Cost, Insurance, Freight Free Out) one safe berth one safe port ex Marmara Sea, Turkey

Insurance: To be covered by Sellers. Seller covers cargo's marine risks only during MV "Myship" or sub voyage.

Payment:    Net cash against fax copies of shipping documents (as described hereinafter) to Buyers, in 48 hours upon receipt but in any case always before breaking bulk.

- All banking expenses in Buyers' bank to be for Buyers' account and in Sellers' bank to be for Sellers' account. All original documents shall be send to Buyer's office after having received the funds.

   Upon arrival of the vessel (provided payment has been received) Sellers shall arrange for discharge against LOI

- Any cost and/or consequences due to delay in payment for Buyers' account.

Conditions:  All other terms, rules and conditions, not conflicting with the contents of this contract are as per GAFTA Nr. 100.

- Arbitration, in London, as per GAFTA Nr. 125.
- Both parties admit that they have knowledge and notice of these contracts.

Special conditions:
- Weight and Quality/Condition final at time and place of loading as per certificate(s) issued by GAFTA approved Surveyors (B.Veritas), at Sellers' choice and expense; Buyers have the right to be (re)present(ed) during loading for inspection of weight and quality of goods, for which Sellers shall give Buyers notice in due time.
- Documents :
   Sellers' original commercial invoice, stamped/signed
   3/3 original B(s)/L, marked "clean on board" and "freight prepaid"
   weight certificate, issued by GAFTA approved Surveyors
   quality and condition certificate, issued by GAFTA approved Surveyors
   holds cleanliness certificate, issued by GAFTA approved Surveyors
   non-radioactivity certificate, issued by competent authorities in the country of origin, confirming CS 134 & CS 137 less than 370 Bq/Kg
   certificate of origin, stamped/signed by Chamber of Commerce in the country of origin, evidencing the origin of the goods shipped
   phytosanitary certificate, issued by competent authorities in the country of origin
   fumigation certificate

Beneficiary: ACC 26001338; Ben. Bank: Scib "Ukrsibbank", Kharkov, Ua, Swift: Khab Ua 2k
In Favour of CB"SCB" Ltd Odessa, UA, Acc 16002580850000
Intermed.bank: Citybank, NY, USA, Swift: City US 33, ACC. 36141251



**VELES-AGRO**

100, 146/2 Lustdorfskaya rd.,
65113, Odessa, Ukraine
tel./fax:+38 (0482) 34 83 95
e-mail: victor_korobko@eurocom.od.ua

veterinary certificate
non-dioxine certificate
Master's declaration confirming receipt of 1 original B(s)/L, original certificate of origin, original veterinary certificate and original phytosanitary certificate on board of the vessel with the goods.

- Buyers guarantee a discharging rate of 1,000 metric tons per WWD of 24 consecutive hours, Saturdays, Sundays, Holidays excluded, even if used.
- Time to start counting as from 08:00 hours next working day after valid Notice Of Readiness has been tendered during usual office hours, WIBON, WIPON, WIFPON, WCCON.
- Time from Friday (or from a day preceding a Holiday) 17:00 hours till Monday (or next working day) 08:00 hours not to count as lay-time, even if used.
- Demurrage-/despatch-rate as per Charter Party, but demurrage-rate max. USD 1200,-/day/pro-rata. Free dispatch.
- Duties and taxes in country of origin to be for Sellers' account and in country of destination to be for Buyers' account.
- Vessel's agent at port of discharge to be nominated by Buyers.
- Vessel to be single-decker, bulk-carrier, suitable for grab-discharge, classified Lloyd's A1 or equivalent, have valid ISM certificate and be fully covered by respectable P&I club.
- Sellers to ensure that Ship-owners have no right nor any reason to exercise any lien over the cargo in respect of freight, dead-freight, demurrage or damages for detention and Sellers shall indemnify and hold harmless the Buyers in respect of any loss, damage or delay caused to the Buyers by the Ship-owners exercising any such lien in this regard.
- Third party documents are acceptable except commercial invoice.

**INTER BULK TRADE LLC**
(Buyer)

**KULBERG FINANCES, INC.**
(Seller)

**Veles-Agro Ltd**
(Broker)

Beneficiary: ACC 26001338; Ben. Bank: Scib "Ukrsibbank", Kharkov, Ua, Swift: Khab Ua 2k
In Favour of CB"SCB" Ltd Odessa, UA, Acc 16002580850000
Intermed.bank: Citybank, NY, USA, Swift: City US 33, ACC. 36141251

# IPEK DECLARATION
# EXHIBIT 2

Contract no SFSM 017'07

**SELLER**
InterBulk Trade LLC
6100 Neil Road Suite,
500 Reno Nevada, 89511 USA

**BUYER**
ONALLAR YEM SAN VE TIC LTD STI
GULLUCE MEVKI IZMIR YOLU UZERI
MUSTAFA KEMAL PASA
BURSA - TURKEY

COMMODITY: Ukrainian origin Sunflower seed meal pellets in Bulk, crop 2007.

SPECIFICATIONS:
| | |
|---|---|
| MOISTURE | 12 % MAX |
| PROTEIN | BASIS 35 % MIN 34 % |
| FIBRER | MAX. 20%, |
| FAT | 2.0 % MAX |

**WEIGHT:** TO BE FINAL AT LOADING PORT PER GAFTA SURVEYOR AT SELLERS COST

**QUALITY:** TO BE FINAL AT LOADING PORT PER GAFTA SURVEYOR AT SELLERS COST

**QUANTITY:** 2,400. METRIC TONS 10% MORE OR LESS AT SELLER'S OPTION AT CONTRACT PRICE.

**PRICE** : USD 290.- Per Metric Ton CIF BANDIRMA- TURKEY

**PACKING:** IN BULK

**SHIPMENT:** OCT 27 2007- NOV 05, 2007, both dates inclusive.

**PAYMENT:** Cash against fax copies of documents Payable at the counters of Banque de Commerce et de Placement Geneva with fax copies of the following documents,

DOCUMENTS

1. COMMERCIAL INVOICE
2. 3/3 BILL OF LADING
3. WEIGHT CERTIFICATE
4. QUALITY CERTIFICATE
5. ORIGIN CERTIFICATE
6. PHYTOSANITARY CERTIFICATE ISSUED BY GOVERNMENT BODY
7. DIOXIN FREE CERTIFICATE
8. HOLD CLEANLINESS CERTIFICATE




### DISCHARGING TERMS:

1. BUYER TO GUARANTEE AN AVERAGE OF DISCHARGING RATE OF 1,000. MTS PER WWD, FRIDAY FROM 1700 HOURS TO 0800 HOURS MONDAY EXCEPTED, EIU. TIME NOT TO COUNT FROM 17.00 HOURS ON DAY PRECEDING PUBLIC HOLIDAYS TILL 08.00 HOURS ON DAY FOLLOWING PUBLIC HOLIDAY.
2. NOTICE OF READINESS TO BE TENDERED DURING WORKING HOURS FROM 8.00 TO 17:00 FROM MONDAY TO FRIDAY.
3. TIME TO COUNT NEXT WORKING DAY AFTER NOR PRESENTATION WIPON, WIBON, WICCON, WIFPON
4. HOLIDAYS AS PER BIMCO 2007 CALENDER ONLY.
5. DEMURRAGE TO BE AS PER CHARTER PARTY, FREE DESPATCH. DEMURRAGE MONEY, IF INCURRED, TO BE PAID BY SELLER TO BUYER. CLAIMS TO BE SETTLED WITHIN TEN DAYS AFTER THE COMPLETION OF DISCHARGING.

### OTHER TERMS:

1. EXPORT LICENSE AND/OR DUTIES, IF ANY, TO BE GUARANTEED BY SELLER AND ANY EXPENSES INVOLVED THAT ARE FOR SELLER'S ACCOUNT. IMPORT LICENCE AND/OR DUTIES, IF ANY, TO BE GUARANTEED BY BUYERS AND ANY EXPENSES INVOLVED ARE FOR BUYER'S ACCOUNT.
2. NO CARGO TO BE LOADED IN DEEP TANKS OR WING TANK OR OTHER COMPARTMENTS NOT SUITABLE FOR GRAB DISCHARGE.

OTHER TERMS AND CONDITIONS, WHEN NOT IN CONFLICT WITH ABOVE, TO BE AS PER GAFTA 100 INCLUDING GAFTA 125 ARBITRATION RULES WHICH BOTH PARTIES ADMIT FULL NOTICE AND KNOWLEDGE.

### VALIDITY
THIS CONTRACT SHALL BE VALID FROM ITS DATE OF SIGNATURE.

PLEASE SIGN AND RETURN BY FAX, SIGNED FAX COPY IS VALID AS ORIGINAL CONTRACT. THE VALIDITY OF THIS CONTRACT WILL BE UNAFFECTED BY NON RETURN OF THE COUNTER CONFIRMATION DULY SIGNED BY BUYER.

SIGNED ON THIS 26 OCTOBER 2007 AND ISSUED IN TWO SIGNED ORIGINALS ONE FOR EACH PARTY.

**InterBulk Trade LLC**          **ONALLAR YEM SAN VE TIC LTD STI**

(SELLER)                         (BUYER)



# IPEK DECLARATION
# EXHIBIT 3

CODE NAME: "CONGENBILL" . EDITION 1994

C 1.2   Page 2

| Shipper | BILL OF LADING |
|---|---|
| AGROSERVICE LTD<br>54 MIRA AV., DONETSK,<br>UKRAINE, 83052 ON BEHALF OF INTERBULK TRADE LLC | B/L No. 1<br>TO BE USED WITH CHARTER-PARTY<br>Reference No. |

Consignee
TO ORDER

Notify address
ONALLAR YEM SAN VE TIC LTD STI
MUSTAFAKEMALPASA – BURSA / TURKEY

Vessel
M/V "MY SHIP"

Port of loading
MARIUPOL / UKRAINE

Port of discharge
BANDIRMA/TURKEY

**1-st ORIGINAL**

UKRAINIAN SUNFLOWER SEED EXTRACTION MEAL IN BULK       443,680 MT

*[Stamp: M/V MY SHIP, Port Of Register: Bratislava, Register No: 861]*

CLEAN ON BOARD
FREIGHT PREPAID

(of which _____ on deck at Shipper's risk, the Carrier not being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY dated _____

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. Weight, measure, quality, condition, contents and Value unknown.

FREIGHT ADVANCE.
Received on account of freight:

IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

Time used for loading _____ days _____ hours.

| Freight payable at | Place and date of issue |
|---|---|
|  | MARIUPOL, OCTOBER 29, 2007 |
| **Number of original B/L (3)**<br>three | **Signature**<br>KONCAR Shipping AGENT FOR AND ON BEHALF OF MASTER OF M/V " MY SHIP"<br>Mr. PODDU___ |

Printed and sold by
Fr.G. Knudtzons Bogtrykkeri A/S, 55 Toldbodgade,
DK-1253 Copenhagen K,
By authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

Page 1

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL
MARITIME CONFERENCE (BIMCO)

## Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions, including Law and Arbitration clause of the Charter Party, dated as overleaf, are herewith incorporated. The Carrier shall in no case be responsible for loss of or damage to cargo arisen prior to loading and after discharging.

(2) General Paramount Clause.
The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

*Trades where Hague-Visby Rules apply.*
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, in London unless another place is agreed in the Charter.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Netherlands Commercial Code, Art. 700, and the Belgian Commercial Code, Part 2 Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the goods, Shippers, Consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expences of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying ship or her Owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contract.

For particulars of cargo, freight, destination, etc,
see overleaf.

CODE NAME: "CONGENBILL" . EDITION 1994

**C 1.2**  Page 2

| Shipper | BILL OF LADING |
|---|---|
| "UKRAGROIMPEX", LTD<br>UKRAINE, KIEV,<br>84/86, Saksaganskogo LANE, OFFICE 8<br>ON BEHALF OF INTERBULK TRADE LLC | B/L No. **2** |

| Consignee | |
|---|---|
| TO ORDER | TO BE USED WITH CHARTER-PARTIES<br><br>Reference No. |

Notify address
ONALLAR YEM SAN VE TIC LTD STI
MUSTAFAKEMALPASA – BURSA / TURKEY

# 1-st ORIGINAL

Vessel "MY SHIP"

Port of loading    MARIUPOL / UKRAINE

of discharge    BANDIRMA / TURKEY

Shipper's description of goods

UKRAINIAN SUNFLOWER SEED EXTRACTION MEAL IN BULK

CLEAN ON BOARD
FREIGHT PREPAID

(of which _____ on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

| | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. Weight, measure, quality, condition, contents and |
|---|---|
| Freight payable as per<br><br>CH___ER-PARTY dated ____ | |
| FREIGHT ADVANCE. | Value unknown. |
| Received on account of freight: | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
| Time used for loading .......... days .......... hours. | |

| Freight payable at | Place and date of issue<br>MARIUPOL, 29 of October, 2007 |
|---|---|
| Number of original Bs/L **3/3 three** | Signature<br>KONCAR Shipping ___ AGENT FOR AND ON BEHALF OF THE OWNERS OF M/V " MY SHIP"<br>Mr. PODDU___ |

Printed and sold by
Fr.G. Knudtzons Bogtrykkeri A/S, 55 Toldbodgade,
DK-1253 Copenhagen K,
By authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

Page 1
**BILL OF LADING**

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL
MARITIME CONFERENCE (BIMCO)

## Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated. The Carrier shall in no case be responsible for loss of or damage to cargo arisen prior to loading and after discharging.

(2) General Paramount Clause.
The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

*Trades where Hague-Visby Rules apply.*
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, in London unless another place is agreed in the Charter.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Netherlands Commercial Code, Art. 700, and the Belgian Commercial Code, Part 2, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the goods, Shippers, Consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expences of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying ship or her Owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contract.

For particulars of cargo, freight, destination, etc., see overleaf.