UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SIBEL SHIPPING LTD.,

        Plaintiff,                                  07 CV 11216 (LAK)

    -v-

KULBERG FINANCES, INC., AGROSERVICE
LTD., UKRAGROIMPEX LTD., and
INTERBULK TRADE LLC,

        Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE OR REDUCE MARITIME ATTACHMENT AND TO COMPEL PLAINTIFF TO PROVIDE COUNTERSECURITY

 

BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
KULBERG FINANCES, INC.
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

OF COUNSEL:
PETER SKOUFALOS

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................................1

Procedural History .......................................................................................................................1

Factual Background .....................................................................................................................3

ARGUMENT .................................................................................................................................5

Point I – Plaintiff Bears the Burden under Rule E(4)(f) to
Show Why the Attachment Should Not be Vacated ...................................................................5

Point II – The Remaining Attachment Should be Vacated or Reduced ..................................6

Point III – Plaintiff Must Give Countersecurity for
Defendant's Counterclaim Pursuant to Supplemental Rule E(7) ............................................9

Conclusion ..................................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**   **Page**

*Afram Lines Int'l Inc. v. M/V Capetan Yiannis*,
   905 F.2d 347 (11th Cir. 1990) ..................................................................9

*Bay Casino, LLC v. M/V ROYAL EMPRESS*,
   5 F. Supp. 2d 113 (E.D.N.Y. 1998) ...........................................................5

*Sanko Steamship Co., Ltd. v. China National Chartering Corp.*,
   536 F. Supp. 2d 362 (S.D.N.Y. 2008) ......................................................7

*Dongbu Express Co., Ltd. v. Navios Corp.*,
   944 F. Supp. 235 (S.D.N.Y. 1996) ......................................................6-7

*Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*,
   2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. 2005) .......................................5

*Flame Maritime Ltd. v. Hassan Ali Rice Export Co.*,
   2007 U.S. Dist. LEXIS 64470 (S.D.N.Y. 2007) .......................................7

*Front Carriers, Ltd. v. Transfield ER Cape, Ltd.*,
   2007 U.S. Dist. LEXIS 85177 (S.D.N.Y. 2007) .....................................10

*Greenwich Marine, Inc. v. SS Alexandra*,
   339 F.2d 901 (2d Cir. 1965) ......................................................................5

*Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*,
   169 F. Supp. 2d 1341 (M.D. Fla. 2001) .....................................................6

*Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*,
   996 F.2d 506 (2d Cir. 1993) ......................................................................1

*Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*,
   56 F.3d 394 (2d Cir. 1995) ........................................................................9

*Salazar v. M/V ATLANTIC SUN*,
   881 F.2d 73 (3d Cir. 1989) ........................................................................6

*Sea Transp. Contractors, Ltd. v. Indus. Chem. du Senegal*,
   411 F. Supp. 2d 386 (S.D.N.Y. 2006) ........................................................6

*Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS*,
   409 F. Supp. 2d 316 (S.D.N.Y. 2005) ........................................................5

*Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte. Ltd.*,
    531 F. Supp. 2d 586 (S.D.N.Y. 2008) ........................................................... 10-11

*Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.*,
    2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) ................................................. 7

*Ulisses Shipping Corp. v. FAL Shipping Co. Ltd.*,
    415 F. Supp. 2d 318 (S.D.N.Y. 2006) ................................................................ 5

*Voyager Shipholding Corp. v. Hanjin Shipping Co.*,
    2008 U.S. Dist. LEXIS 11045 (S.D.N.Y. 2008) ............................................ 9-11

**Other Authorities**

Fed. R. Civ. P. 4 .............................................................................................................. 1

Fed. R. Civ. P. 7 .............................................................................................................. 2

Supplemental Rule B ................................................................................................... 5, 9

Supplemental Rule E ............................................................................................ *passim.*

Local Admiralty Rule E.1 .............................................................................................. 5

JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE (2d ed. 1996) .......................... 7

## PRELIMINARY STATEMENT

Defendant Kulberg Finances, Inc. ("Defendant" or "Kulberg") submits this memorandum of law in support of its motion to vacate or reduce maritime attachment obtained by plaintiff, Sibel Shipping Ltd. ("Plaintiff"), as well as to obtain countersecurity for the counterclaim Defendant has asserted against Plaintiff. Defendant brings this motion pursuant to Rules E(4), E(6) and E(7) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules"). Also submitted in support of Kulberg's motion are the Declaration of Oleg Khaladzhy and the Affidavit of Peter Skoufalos, Kulberg's counsel in the present action.

## PROCEDURAL HISTORY

Plaintiff commenced this action on December 13, 2007, by filing a Verified Complaint claiming damages in the amount of $142,500.00, and requesting process of maritime attachment for double that amount, or $285,000.00. [Skoufalos Aff. Ex. "A"].[1] This Court rejected Plaintiff's request for an attachment in the latter amount and, instead, issued an Order for Issuance of Process of Maritime Attachment and Garnishment limited to the principal amount, $142,500.00, on the same day. [Skoufalos Aff. Ex. "B"]

On or about December 20, 2007, the Bank of New York restrained $142,500.00 in the form of an electronic fund transfer belonging to Defendant. Plaintiff thus restrained the full amount authorized under the Court's Order.

---

[1] No Proof of Service appears on the docket. The 120-day time limit for service under Fed. R. Civ. P. 4(m) expired on April 11, 2008. While that rule exempts service in a foreign country, the Second Circuit requires the plaintiff to use "due diligence" to serve the defendant or else face dismissal of the complaint. *Mentor Ins, Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 512 (2d Cir. 1993).

1

Defendant appeared in this action by filing its Answer and Counterclaim on March 4, 2008 [Docket # 11; Skoufalos Aff., Ex. "C"].[2] The counterclaim also demanded that Plaintiff provide countersecurity in the amount of $68,584.38, pursuant to Supp. Rule E(7)(a). Despite subsequent demands that Plaintiff furnish countersecurity, Plaintiff has refused to do so.

A portion of Plaintiff's principal claim relates to indemnity for a cargo claim that Plaintiff claims it faces in Turkey from Turkish cargo receivers. However, after Plaintiff was advised that the cargo claim had, in fact, been paid and satisfied by Kulberg directly, and that Plaintiff had no further basis to attach property related to the indemnity claim, Plaintiff agreed to release $47,500.00 from attachment on or about March 6, 2008. Therefore, the amount currently under attachment is $95,000.00.

All disputes arising under the parties' contract are subject to London arbitration. Although Plaintiff purports to pursue this action in aid of such arbitration, Plaintiff has not apparently taken any steps to commence London arbitration or to otherwise pursue its claim in that forum. [Khaladzhy Decl. ¶ 4]; *contra* Complaint ¶ 13 (stating that "Plaintiff has timely commenced arbitration in London seeking $142,000.00 in damages.").

On or about January 22, 2008, Plaintiff voluntarily dismissed defendant Interbulk Trade L.L.C. from this action [Docket # 10].

Defendant now brings this motion to compel Plaintiff to provide countersecurity for Defendant's counterclaims as required by Supplemental Rule E(7), and to vacate or reduce the amount of the attachment held by Plaintiff pursuant to Supplemental Rules E(4)(f) and E(6).

---

[2] No reply to Defendant's counterclaim appears on the docket, as required by Fed. R. Civ. P. 7(a).

2

## FACTUAL BACKGROUND

The underlying dispute between the parties arises out of the charter of the vessel M/V MY SHIP pursuant to a charter agreement dated October 18, 2007 ("the Charter Agreement"). Under the terms of the Charter Agreement, Plaintiff, as the vessel owner, agreed to charter the vessel to Kulberg to transport a cargo of sunflower seed extraction from Mariupol, Ukraine to Bandirma, Turkey. [Khaladzhy Decl. ¶ 3]. The Charter Agreement is annexed to the Khaladzhy Decl. as Exhibit "B".

As the cargo was being loaded in Ukraine, Defendant noted discrepancies in the quantity loaded between shore-side measurements and a draft survey performed for Kulberg. [Khaladzhy Decl. ¶ 8]. The draft survey is annexed to the Khaladzhy Decl. as Exhibit "C". Fearing that these discrepancies—if not resolved—could be exploited by the cargo receivers in Turkey, Kulberg protested and demanded an investigation into their cause before the vessel sailed. [Khaladzhy Decl. ¶ 9]. Plaintiff, however, refused Kulberg's request. [Khaladzhy Decl. ¶ 9].

Upon discharge in Bandirma, the cargo receiver claimed a shortage of cargo and commenced proceedings against Defendant in Turkey. Additionally, Plaintiff alleges that the cargo receiver arrested the vessel in Turkey to secure its claim of "an alleged shortage of cargo". Because Plaintiff prevented Defendant from investigating the discrepancy at Mariupol, Defendant was unable to rebut or otherwise assert an adequate defense to the cargo receiver's claims. Therefore, Defendant was required to settle the cargo receiver's claim for $24,000.00. [Khaladzhy Decl. ¶ 11]. The settlement agreement between Kulberg and the cargo receiver is annexed to the Khaladzhy Decl. as Exhibit "D".

Plaintiff's Complaint does not provide a breakdown of the items comprising the claimed damages. Plaintiff merely alleges that it incurred "significant financial damage" as a result of the

arrest of the vessel. [Complaint, ¶ 10]. Nevertheless, Plaintiff has indicated that its remaining claims are for the alleged i) loss of use of the vessel; ii) cost of a letter of guarantee furnished to obtain the release of the vessel after its arrest by the Turkish receivers; iii) Turkish legal fees; and iv) a customs fine.

With respect to the alleged loss of the use of the vessel, the Khaladzhy Declaration indicates that, in fact, the vessel's activities do not appear to have been affected at all during discharge operations in Turkey. A Statement of Facts (SOF), prepared by the local port agent and signed by the master of the vessel, indicates that the vessel continued cargo operations in the normal course. This SOF makes no mention of interruptions to cargo discharge operations (other then due to weather or the unavailability of work gangs). In fact, the SOF expressly notes "worked (sic) and discharge completed" on November 11, 2007, even though the Plaintiff claims that it had lost the use of the vessel during this period. [Khaladzhy Decl. ¶ 16]. A copy of the SOF is annexed to the Khaladzhy Decl. as Exhibit "E".

The Khaladzhy Declaration also addresses Plaintiff's claim in the amount of $10,000.00, which Plaintiff claims is the amount of a customs fine it expects Turkish authorities to impose on the Plaintiff. There is no evidence that Plaintiff has paid this fine; is liable to pay this fine; will be paying this alleged fine in the near future; or even that such a fine has been imposed by Turkish customs officials.

Finally, Plaintiff claims that it incurred legal charges in Turkey in relation to the vessel's arrest. Plaintiff has provided no evidence of these legal fees despite repeated demands therefor. [Skoufalos Aff. ¶ 7, Ex. "E"].

## ARGUMENT

### POINT I

#### PLAINTIFF BEARS THE BURDEN UNDER RULE E(4)(f) TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED OR REDUCED

Once property is attached under Rule B, "a plaintiff shall be required to show why the . . . attachment should not be vacated or other relief granted consistent with these rules." Supplemental Rule E(4)(f). Local Admiralty Rule E.1 provides that such a hearing shall be held within three (3) court days, unless otherwise ordered." At all times during the Rule E(4)(f) hearing, the burden remains on the plaintiff to show why the attachment should not be vacated.

Supplemental Rule E(4)(f) provides that "any person claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated . . . ." At this post-attachment hearing, the defendant can attack the sufficiency of the "complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Supp. R. E(4)(f) Advisory Committee Note (1985 amendment). Plaintiff, as the party obtaining the attachment, "has the burden of showing that the attachment should not be vacated" at the hearing. *Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS*, 409 F. Supp. 2d 316, 318 (S.D.N.Y. 2005); *Bay Casino, LLC v. MN ROYAL EMPRESS*, 5 F. Supp. 2d 113, 125 (E.D.N.Y. 1998); *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006).

Moreover, a district court has discretion to review the relative equities of the parties in determining whether to uphold a maritime attachment. *Greenwich Marine, Inc. v. SS Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965); *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, 2005 U.S. Dist. LEXIS 19876, at *6 (S.D.N.Y. 2005). Under this inherent power, a district court

5

may vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff. *Sea Transp. Contractors, Ltd. v. Indus. Chem. du Senegal*, 411 F. Supp. 2d 386, 391 (S.D.N.Y. 2006).

Rule E itself does not specify what form the post-attachment hearing must follow, and the nature and scope of the hearing depend upon the issues in controversy. *Salazar v. M/V ATLANTIC SUN*, 881 F.2d 73, 79 (3d Cir. 1989); *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*, 169 F. Supp. 2d 1341, 1357 (M.D. Fla. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff . . . to show why the attachment should not be vacated").

In this case, all that has been asked of Plaintiff is to provide some evidence for each component of its claim. None has been provided, either by way of documentary evidence or affidavit testimony. Consequently, Plaintiff will be unable to discharge its burden in this Rule E(4)(f) hearing.

## POINT II

### THE REMAINING ATTACHMENT SHOULD BE VACATED OR REDUCED

Supplemental Rule E(6) allows the court, "on motion and hearing, for good cause shown, [to] reduce the amount of security given." *See Dongbu Express Co., Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996) (discussing the hearing requirement for a motion to reduce pursuant to Supplemental Rule E(6)). Thus, in a proceeding to reduce an attachment, the plaintiff bears the burden of proving that the order was proper for the full amount claimed by the plaintiff.

The court may reduce the attachment "for good cause shown." Supp. R. E(6). Finding "good cause" is within the court's discretion, as "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district court judge sitting as an admiralty judge . . . ." *Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.*, 2007 U.S. Dist. LEXIS 50260, at *13 (S.D.N.Y. 2007) (citing *Greenwich Marine* (339 F.2d at 905) in the context of a motion to reduce attachment).

Because of the ease with which Supplemental Rule B process is granted, "based upon reasonable estimates and not precise facts, parties often attach amounts which are later deemed excessive in light of changes in circumstance." *Dongbu*, 944 F. Supp. at 237 (citing 7A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ E14 (2d ed. 1996); *Flame Maritime Ltd. v. Hassan Ali Rice Export Co.*, 2007 U.S. Dist. LEXIS 64470, at *5 (S.D.N.Y. 2007). "As a result, a reduction in security is 'freely granted upon a showing that the [attachment] is excessive.'" *Dongbu*, 944 F. Supp. at 237.

While Plaintiff "need not prove its damages with exactitude . . . the court must be satisfied that the plaintiff's claims are not frivolous." *Dongbu*, 944 F. Supp. at 237. Even where the claims are non-frivolous, the plaintiff must provide a "reasonable estimate" for the amount attached. *Id.* at 238.

Plaintiff is still holding $95,000 of Kulberg's property. Plaintiff has refused to release this balance or to provide any proof or evidence for the amounts the Plaintiff is continuing to hold. If the Plaintiff cannot justify the basis or amount of the funds attached, then Kulberg respectfully requests that this Honorable Court either order the Plaintiff to release the remaining funds or order a reduction in the amount of the security being held by the Plaintiff. *See Sanko Steamship Co., Ltd. v. China National Chartering Corp.*, 536 F. Supp. 2d 362, 368 (S.D.N.Y.

2008) (reducing attachment by seventy percent, "given the lack of documentary evidence regarding fees and costs").

Although the Complaint provides no breakdown of the alleged "significant financial damage" (Compl. ¶10), Plaintiff has indicated that its remaining claims are for the alleged i) loss of use of the vessel (amount unspecified); ii) cost of a letter of guarantee furnished by Plaintiff to release the vessel from arrest ($842.50); iii) Turkish legal fees ($2,645.00); and iv) a customs fine ($10,000.00).

With respect to Plaintiff's claim for the alleged loss of the use of the vessel, annexed as Exhibit "E" to the Khaladzhy Decl. is a copy of the Statement of Facts ("SOF") issued at Bandirma, the discharge port, and signed by the vessel's master. The SOF indicates that the vessel continued cargo operations in the normal course and that the vessel's cargo operations were never disrupted. In fact, the SOF expressly notes that work and discharge was completed on November 11, 2007, even though the Plaintiff claims that it had lost the use of the vessel during this same period.

Plaintiff claims losses in the amount of $842.50, representing the cost of a letter of guarantee to post in exchange for the release of the vessel. However, Plaintiff has not produced any evidence whatsoever that this cost was, in fact, incurred.

Plaintiff also claims that it is entitled to recover $2,645.00 for legal fees incurred in Turkey in order to obtain release of the vessel. However, the Plaintiff has not produced any evidence whatsoever that these Turkish legal fees were, in fact, incurred.

Finally, the Plaintiff claims losses in the amount of $10,000.00, which the Plaintiff claims is the amount of a customs fine it expects Turkish authorities to impose on the Plaintiff. First, there is no evidence that such a customs fine will, in fact, be imposed. Second, there is no

evidence before the Court that, even if such a fine is imposed, that Plaintiff would be liable to pay the fine. Third, there is no evidence that Plaintiff has paid the alleged customs fine. At present, this alleged customs fine remains remote, uncertain, and unaccrued.

It should be emphasized that Plaintiff has been given ample opportunity to produce evidence to support its entitlement to attach the remaining funds under Rule B. As can be seen from Exhibit "E" to the Skoufalos Affidavit in support of the present motion, numerous requests were made in February and March of 2008 to Plaintiff requesting supporting documentation concerning the alleged remaining claims. To date, this evidence has not been produced.

### POINT III

### PLAINTIFF MUST GIVE COUNTERSECURITY FOR DEFENDANT'S COUNTERCLAIM PURSUANT TO SUPPLEMENTAL RULE E(7)

Supplemental Rule E(7) provides security for counterclaims where the plaintiff has already obtained security for its claim. That rule states:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.

Thus, a plaintiff can only avoid its duty to provide countersecurity "for cause shown." *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995).

The court has "broad discretion in deciding whether to order countersecurity" when the requisite conditions are met. *Id.*; *Afram Lines International Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349 (11th Cir. 1990); *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 07 CV 11123, 2008 U.S. Dist. LEXIS 11045, at *3 (S.D.N.Y. Feb. 13, 2008). The court must balance

the need "to place the parties on an equality as regards security" with the duty not to "impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Voyager Shipholding*, 2008 U.S. Dist. LEXIS 11123, at *4.

While the court should not award countersecurity for frivolous claims, "courts need to be cautious in addressing the merits of such disputes at the very preliminary stage of litigation at which security and countersecurity issues typically arise." *Id.* at *6. For the court reviewing the request for countersecurity, inquiry into the merits of the counterclaim is "severely limited." *Id.*; *Front Carriers, Ltd. v. Transfield ER Cape, Ltd.*, 07 CV 6333, 2007 U.S. Dist. LEXIS 85177, at *2 (S.D.N.Y. Nov. 19, 2007); *Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd.*, 531 F. Supp. 2d 586, 598 (S.D.N.Y. 2008) (noting that the court considering a countersecurity request should "should not conduct extensive merits analysis, but rather, screen only for 'totally frivolous claims.'").

Supplemental Rule E(7) requires that the counterclaim arise "from the same transaction or occurrence that is the subject of the original action." In determining the relatedness of a Supplemental Rule E counterclaim, the term "transaction":

> "has a 'flexible meaning' that 'may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship.' . . . [T]he Second Circuit has taken a 'broad view' of the rule, based on whether there is a 'logical relationship between the claim and the counterclaim' such that 'considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"

*Voyager Shipholding*, 2008 U.S. Dist. LEXIS 11123, at *5 (citations omitted).

The Defendant's counterclaim alleges damages from a "transaction or occurrence" that is precisely the source of Plaintiff's claim. Specifically, Plaintiff claims that a shortage of Defendant's cargo led to the arrest of Plaintiff's vessel. Defendant requests countersecurity for claims against it on account of this same cargo shortage. Defendant's request for

countersecurity, therefore, indisputably arises from the "transaction or occurrence that is the subject of the original action." Supp. R. E(7); *see also Voyager Shipholding*, 2008 U.S. Dist. LEXIS 11123, at **4-5.

Plaintiff obtained security in the amount of $95,000.00 by attaching an electronic funds transfer of Defendant's funds at the Bank of New York on or before December 20, 2007. Defendant has asserted a counterclaim for $68,584.38 for damages arising out of Plaintiff's wrongful acts during the subject voyage. Therefore, Plaintiff, "for whose benefit the security has been given, must give security for damages demanded in the counterclaim . . . ." Supp. R. E(7). Requiring Plaintiff to post countersecurity is appropriate under these circumstances. *See Voyager Shipholding* 2008 U.S. Dist. LEXIS 11123, at **3-4; Tang Kheok, 531 F. Supp. 2d at 589.

Here, Kulberg's counterclaim and demand for countersecurity fit squarely within the parameters of Supplemental Rule E(7). Defendant has asserted a counterclaim and demanded countersecurity, but Plaintiff has provided no countersecurity, nor has it shown cause why countersecurity is inappropriate. An order should be entered directing Plaintiff to furnish countersecurity to Defendant in the amount of $68,584.38

## CONCLUSION

For the reasons stated above, Plaintiff should be ordered to post countersecurity in the amount of $68,584.38 in the form of cash, a bond, or other acceptable form of security. Moreover, the Court should vacate or reduce Plaintiff's attachment of Defendant's funds.

Dated: New York, New York
May 29, 2008

BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
KULBERG FINANCES, INC.

By: _____
Peter Skoufalos (PS 0105)
355 Lexington Avenue
New York, New York 10017
Tel: (212)983-8500
Fax: (212) 983-5946

Of Counsel:
Peter Skoufalos