BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
KULBERG FINANCES INC.
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SIBEL SHIPPING LTD.,

                Plaintiff,                              07 CV 11216 (LAK)

    -v-

                                              **DECLARATION OF**
KULBERG FINANCES, INC., AGROSERVICE        **OLEG KHALADZHY**
LTD., UKRAGROIMPEX LTD., and
INTERBULK TRADE LLC,

                Defendants.
-------------------------------------------------------------X

        I, OLEG KHALADZHY, pursuant to Section 1746 of Title 28 of the United States Code,

hereby declare and say the following under penalty of perjury:

        1.      This Declaration is respectfully submitted in support of the defendant Kulberg

Finances, Inc.'s ("Defendant" or "Kulberg") motion to reduce the maritime attachment obtained

by plaintiff Sibel Shipping Ltd. ("Plaintiff"), and to request that Plaintiff furnish countersecurity

for Kulberg's claim against the Plaintiff.

        2.      I am a citizen of Ukraine and a resident of the City of Donetsk, Ukraine. I have

been granted Power of Attorney to represent Kulberg, including the power to defend the

company in litigation and to commence litigation on its behalf. Annexed hereto as Exhibit "A"

is a copy of the Power of Attorney duly executed by Shane Michael Smith, Director, on behalf of

Kulberg, on January 29, 2008.

3.      As Attorney-in-Fact for Kulberg, I am fully familiar with the proceedings before this Court and the facts of the underlying dispute between Plaintiff and Defendant. I base my statements based on my personal knowledge and involvement in the voyage and cargo at issue in this case, and on the basis of documents I have reviewed.

3.      I have read the Complaint filed in this Honorable Court by the Plaintiff from which I understand that the Plaintiff is claiming losses from a charter agreement dated October 18, 2007, pursuant to which a cargo of sunflower seed extract was transported from Ukraine to Turkey. It is also my understanding that the Plaintiff has restrained property of Kulberg in order to secure any favorable award the Plaintiff may obtain against Kulberg in London arbitration.

4.      Initially, I believe it is important to mention that, as far as Kulberg is aware, the Plaintiff has not taken any steps whatsoever to commence or pursue a claim against Kulberg in London arbitration. Nor has Kulberg received any notice of Plaintiff's intent to start an arbitration in London. If the Plaintiff will not be pursuing arbitration in London, then it is highly unfair to allow the Plaintiff to restrain Kulberg's property as security for a London arbitration that has not even commenced.

5.      In addition, I would like to clarify that Kulberg fully disputes the statements made in the Complaint by the Plaintiff. These allegations are themselves extremely vague, and, at times, incorrect. For example, at paragraphs 8 and 9 of the Complaint, the Plaintiff refers to three (3) separate "maritime contracts" and seems unsure as to which Contract governs the Plaintiff's claim. Nevertheless, Kulberg disputes that it is in breach of any agreement with the Plaintiff and that Kulberg is indebted to Plaintiff in any manner. If and when the Plaintiff commences arbitration in London, Kulberg will contest the claim vigorously.

### KULBERG'S COUNTERCLAIM AND REQUEST FOR COUNTERSECURITY

6.   Further, Kulberg has asserted its own counterclaim against the Plaintiff arising out of the same agreement of the M/V MY SHIP as concerns the Plaintiff's complaint.  This claim has been set out as a counterclaim in the Answer filed on behalf of Kulberg in the current proceedings before this Honorable Court.  Since I believe Kulberg's claim meets all of the criteria of this Honorable Court for countersecurity, Kulberg also respectfully requests that the Plaintiff be required to provide security to Kulberg for Kulberg's counterclaim against the Plaintiff.  It is my understanding that the Kulberg's Answer and Counterclaim has been exhibited in the affidavit of Kulberg's counsel, Peter Skoufalos, supporting the present application.

7.   The substance of Kulberg's claim against Plaintiff is that Plaintiff breached the charter agreement by failing to investigate cargo quantity discrepancies at the time of loading in Ukraine, and that this breach by Plaintiff exposed Kulberg to a claim from local cargo receivers in Turkey.  A copy of the Fixture Note evidencing the parties' agreement is annexed hereto as Exhibit "B".

8.   Specifically, while the cargo was being loaded on to the M/V MY SHIP, Kulberg's representatives in Ukraine noticed discrepancies between the draft survey, performed on Defendant's behalf, and shore-side measurements of the cargo. Kulberg and Plaintiff agreed that the cargo quantity was "to be determined by draft survey for [Kulberg's] time and account." A copy of the draft survey performed on Kulberg's behalf is attached hereto as Exhibit "C".  A draft survey is a method of measuring cargo quantity after the cargo is loaded aboard the vessel, and is based on measuring the draft of the vessel in a pre- and post-loaded condition.

9.   Kulberg protested the discrepancies relating to cargo quantity and feared that these discrepancies would be exploited by the cargo interest at the port of discharge in Turkey.

For this reason, Kulberg demanded that Plaintiff ascertain the cause of the discrepancies prior to the vessel's departure from the port of loading. However, Plaintiff refused and failed to conduct a further draft survey or to otherwise investigate the cause of the discrepancy in cargo measurements.

10.    Upon discharge in Bandirma, the cargo receiver did, in fact, claim a shortage of cargo and commenced proceedings against Kulberg in Turkey. Additionally, the cargo receiver arrested the vessel as security for its claims. Kulberg had no involvement in the proceedings commenced by the receivers against the vessel.

11.    Because of the Plaintiff's failure to investigate the discrepancy at Ukraine, Kulberg was unable to rebut or otherwise assert an adequate defense to the cargo receiver's claims. As a consequence, Kulberg was required to settle the cargo receiver's claim for $24,000.00. Attached hereto as Exhibit "D" to my Declaration is the settlement agreement between Kulberg and the cargo receivers, Messrs. Onallar Yem Sanayii ve Ticaret Ltd., Stl.

12.    Kulberg's counterclaim against the Plaintiff is to recover the $24,000.00 paid to the cargo receivers, together with interest ($4,584.38) and legal costs ($40,000) in the same manner as claimed by the Plaintiff. Therefore, Kulberg's claim for which it seeks countersecurity from the Plaintiff totals $68,584.38 ($24,000.00 + $4,583.38 + $40,000.00) Please see paragraphs 7 and 11 of Kulberg's Answer and Counterclaim.

**PLAINTIFF'S REMAINING CLAIMS AND REQUEST FOR SECURITY**

13.    The Plaintiff originally seized $142,500.00 in funds belonging to Kulberg at the Bank of New York on or about December 20, 2007.

14.    On or about March 16, 2008, Plaintiff voluntarily released $47,500.00 from attachment, because Plaintiff had no basis to hold funds related to the Turkish cargo claim

insofar as this claim had been paid by Kulberg. However, Plaintiff is still holding $95,000 of Kulberg's property. Plaintiff has refused to release this balance or to provide any proof or evidence for the amounts the Plaintiff is continuing to hold. If the Plaintiff cannot justify the basis or amount of the funds attached, then Kulberg respectfully requests that this Honorable Court either order the Plaintiff to release the remaining funds or order a reduction in the amount of the security being held by the Plaintiff.

15.     It is my understanding that the main portion of the Plaintiff's claim is for the loss of use of the vessel while it was under arrest by the Turkish cargo receivers. Secondly, Plaintiff alleges that it was required to obtain a bank letter of guarantee in favor of the Turkish cargo interests and that it incurred costs in the amount of $842.50 to obtain such a letter of guarantee. Third, the Plaintiff claims that it incurred legal fees in Turkey in the amount of $2,645.00 in relation to the cargo receiver's claims. Finally, the Plaintiff claims that it may, at some future time, be required to pay a customs fine in the amount of $10,000.00 in connection with the cargo quantity discrepancy.

16.     With respect to Plaintiff's claim for the alleged loss of the use of the vessel, annexed hereto as Exhibit "E" is a copy of the Statement of Facts ("SOF") issued at Bandirma, the discharge port, and signed by the vessel's master. The SOF indicates that the vessel continued cargo operations in the normal course and that the vessel's operations were never disrupted. This SOF makes no mention of a stoppage of discharge (other then due to weather or the unavailability of work gangs). In fact, the SOF expressly notes that work and discharge was completed on November 11, 2007, even though the Plaintiff claims that it had lost the use of the vessel during this same period.

16.     Therefore, there is currently no evidence before this Honorable Court that the Plaintiff was deprived of the use of the vessel for any period of time at the discharge port.

17.     Plaintiff claims losses in the amount of $842.50, representing the cost of acquiring a letter of guarantee to post in exchange for the release of the vessel. However, the Plaintiff has not produced any evidence whatsoever that this cost was, in fact, incurred.

18.     The Plaintiff also claims that it is entitled to $2,645.00 for legal fees incurred in Turkey in order to obtain release of the vessel. However, the Plaintiff has not produced any evidence whatsoever that these Turkish legal fees were, in fact, incurred.

19.     Finally, the Plaintiff is claiming losses in the amount of $10,000.00, which the Plaintiff claims is the amount of a customs fine it expects Turkish authorities to impose on the Plaintiff. First, I would like to emphasize that the Plaintiff does not claim to have paid such a customs fine. The nature of the Plaintiff's claim is only that it may have to pay this claim at some unknown time in the future. It seems highly unfair to allow the Plaintiff to seize Kulberg's property as security for a claim that the Plaintiff cannot even make at this time. In addition, the Plaintiff has offered no evidence whatsoever that such a fine has been or will be imposed by Turkish government officials on the Plaintiff.

20.     If the Plaintiff's main claims cannot stand, I respectfully submit that there is no justifiable basis to continue holding Kulberg's funds.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Donetsk, Ukraine
        May 29, 2008

OLEG KHALADZHY

# EXHIBIT
# "A"

### GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS that KULBERG FINANCES INC., a Corporation in good standing, incorporated in the State of Delaware on the 19th day of June 1998, with registered number 2911125, constitutes and appoints:

**Mr. Oleg Khaladzhy; date of birth: November 20, 1967; passport number: AE545806**

its

### TRUE AND LAWFUL ATTORNEY-IN-FACT

to act singly for it and its name, place and stead and to its use until the 31st of March 2009 and to do the following:

1.  to open, use and dispose bank accounts, to deposit in any bank it may have an account, any moneys, checks draft or other subjects of deposit and to withdraw the same by check, draft or other means;

2.  to sell or buy at public private sale and to lease or release any real estate or tangible personal property owned by it, for any term of years, for such price and on such terms as its said attorney-in-fact shall deem proper and advisable and for it and its name, to make, execute, join in the execution or making to acknowledge and deliver good and sufficient leases, bills of sale, assignments, deeds and conveyances for the same and to receive the consideration money from any and all such sales and to remit the same to this corporation, for it shall be required to inquire into the disposition of any funds received by him on its behalf;

3.  to purchase real and tangible property from any individual, corporation or other legal entity on such terms and conditions as he may deem desirable and in the payment thereof to pay for the same;

4.  to collect for it any and all moneys or accounts receivable due it and to give full acquaintance upon the receipt of any such payments;

5.  to pay any and all debts, accounts payable, notes, mortgages, or other obligations owned by it from time to time out of funds in its name;

6.  it is hereby declared this corporation's intention to give its said attorney-in-fact the broadest possible powers for the purpose, herein expressed and it does hereby confer upon its said attorney-in-fact the full power to do everything, and anything whatsoever requisite and necessary to be done in the premises as fully as it could if personally present, with full power to act in its name, and it hereby ratifies and confirms any and all acts that its said attorney-in-fact will lawfully do or cause to be done by virtue hereof;

7.  to have a right to employ lawyers; advocates for protection interest of the company and give them power to plead any cases on behalf of the company

8.  to represent the company in all private enterprises and government institutions, including customs authorities;

9.  to open subsidiaries and representative offices and branches in other countries and jurisdictions and to sign all the necessary documents on behalf of the company,

10.  to represent the company in all institutions of other countries and jurisdictions.

11.  by the present power of attorney the attorney in fact is granted the right to make transaction specified herein on behalf of the Company also with him/herself.

IN WITNESS WHEREOF: KULBERG FINANCES INC. has caused this instrument to be executed on its behalf in Cyprus and has caused the signature of its duly elected and authorized officer, namely Mr. Michael Smith (date of birth: September 10, 1973) to be affixed this 29th day of January 2008.

Mr. Shane Michael Smith
Director
KULBERG FINANCES INC.

Signed and sealed this copy in my presence
by _SHANE MICHAEL SMITH_

Who is/are personally known to me in testimony whereof I have hereto set my hand and official seal this  29th day of _January 2008_

DINA CHARITOU
Certifying Officer Idoides - Cyprus



This is to certify that signature appearing above /overleaf is
the signature of Mrs DINA CHARITOU
a Certifying Officer of Nicosia, appointed by the Council of
Ministers of the Republic of Cyprus under the Certifying
Officers Law Cap.39 to certify signature and seals, and
that the seal opposite the said signature is that of the
Certifying officer of Nicosia

Nicosia - Cyprus
Date ___ 0 4 FEB 2008                    District Officer
                                                Nicosia
                              (Sg)  K. SPYROU

## APOSTILLE
### (Convention de La Haye du 5 octobre 1961)

1. Country CYPRUS.
   This public document
2. has been signed by          (Sg)  K. SPYROU
3. acting in the capacity of District Officer
4. bears the seal/stamp of the District Officer

                                    Certified      0 4 FEB 2008
5. at Nicosia.                6. the
7. by   A. DEMETRIADOU
8. No.   34174/08
9. Seal/stamp:                        10 Signature:

                                        Permanent Secretary
                                  Ministry of Justice and Public Order

# EXHIBIT
# "B"

*M/V Mayship acc Kulberg CP DATED 18.10.07*

# FIXING NOTE

Mv Myship
Flag Slovak
Dwat 3120 mts on 5.745 mt draft
1983 built, sid
grt / nrt 1998 / 1075
1/1 ho/ha
gr / bl 144006.9 FT3/ 138246.6 FT3
l/b/d 77 /13 / 6.5 m
ho dims : 45.56 x 11.29 x 8.07 m
ha dims: 44.20 x 1018 x 2.58 m
gearless
All abt wog


FOR:
-SUB STEM/SHPRS/RECEIVERS APPROVAL - ALL IN ORDER, VESSEL FIXED CLEAN AND FULLY
-ACCT: KULBERG FINANCES INC., 15 EAST NORTH STREET IN THE CITY OF DOVER, COUNTY OF KENT, DE 19901, USA. DIRECTOR MR. SHANE MICHAEL SMITH
- UP TO FCC VSL'S CAP IN CHOPT OF SFS MEAL STW ABT 62'
-NO APPENDIX B REQUIRED
-LOADING: MARIUPOL
-DISCHARGING: BANDIRMA
-1 GSPB AAAA BENDS
-L/C: 23-26 OCT 2007
-L/D 5 TTL DS OF 24 CONSEC HOURS SSHEX EIU BE FRIDAY OR DAY PRECEEDING HOLIDAY 1700/MONDAY OR FIRST WORKING DAY AFTER HOLIDAY 0800
-UPON LOADING VSL'S HOLDS MUST BE DRY, CLEAN, FREE FROM INSECTS
-BEFORE LOADING HOLDS MUST BE ACCEPTED BY STATE GRAIN INSPECTION. IN CASE OF BAD RESULT THEN TIME/EXP FOR DRYING/CLEANING TO BE FOR OWS ACCNT, NOT TO COUNT AS LAYTIME
-CARGO QUANTITY TO BE DETERMINED BY DRAFT SURVEY FOR CHRTR'S TIME/ACCOUNT. TIME FOR DRAFT SURVEY TO COUNT AS LTIME. TIME FOR WAITING DRAFT SURVEY TO COUNT AS LAYTIME. TIME FOR PUMPING OUT BALLAST, NESSESARY FOR DRAFT SURVEY NOT TO COUNT
-OWNERS ARE NOT RESPONSIBLE FOR CARGO QTTY
-FRT USD 70 000 L'SUM BSS 1/1, FIO SPOUT/GRAB TRIMMED BSS DISCH AT BANDIRMA
-FRT PAYABLE: 100 PCT LESS COMMISIONS ONLY W/I 2 BDAYS AFTER S/RELEASING BS/L MARKED 'FRT PAYABLE AS PER C/P' TO OWNERS' OR MANAGERS NOMINATED BANK ACCT IN USD CURRENCY
-SHOULD CHRTRS REQUIRE 'FREIGHT PREPAID' BS/L SAME TO REMAIN AT AGENT CUSTODY TILL OWNERS RECEIVE FULL FRT ON THEIR ACCOUNT
-SHIFTING TO SECOND LOAD/DISCH BERTH/BARGE IF ANY, TO BE FOR CHRTRS ACCOUNT AND TIME BE
-FREIGHT DEEMED EARNED ON SIGNING B/L DISCOUNTLESS AND NONRETURNABLE SHIP AND/OR CARGO LOST OR NOT LOST
-NOR CONSIDERED TO BE VALID IF GIVEN DURING LAYCAN, LOCAL WORKINGDAYS/OFFICE HOURS, W/W/W/W EVEN BY VHF/RADIO/TLX/PHONE/CABLE/FAX
-LAYTIME TO COUNT 08:00 AM / 14:00 PM BE
-DEMM USD 3000 PDPR/FD BENDS
-ONCE ON DEMURRAGE, ALWAYS ON DEMURRAGE
-MASTER HAS THE RIGHT TO REJECT ANY UNSOUND/DAMAGED CARGO, CHARTERERS TO BE RESPONSIBLE FOR REPLACEMENT OF CARGO FOUND UNSOUND AND ALL TIME USED FOR IT TO COUNT AS LAYTIME
-SHORE/FLOATING CRANES FOR BOTH LOAD AND DISCH OPERATIONS TO BE FOR SHIPPERS/RCVRS/CHRTS TIME/ACCOUNT BENDS
-CGO ANALYSIS, IF ANY, TO BE FOR CHRTRS ACCOUNT AND ALL WAITING TIME TO COUNT AS LAYTIME BE
-CHABE,

*M/V Mayship acc Kulberg CP DATED 18.10.07*

```
LOADPORT: CHRTRS AGENT
KONCAR SHIPPING AGENCY-MARIUPOL'
PERSON IN CHARGE - MR.SERGEY PODDUDA
TEL/FAX: +38 0629 41-71-34
MOB. :   +38 067 621-37-88
MOB. :   +38 095 5262018
E-mail: koncars@gmail.com


DISCHPORT - TBN SUB D/A PROF
-FUMIGATION, IF ANY, FOR CHRTS ACCT INCL TIME  LOST
-TAXES/DUES ON CARGO/FRT TO BE FOR CHARTERERS ACCOUNT
-TAXES/DUES ON VESSEL/FLAG/CREW TO BE FOR OWNERS' ACCOUNT
-EXINS DUE TO VSL'S AGE,  IF ANY, TO BE FOR CHRS ACCOUNT
-GA/ARBITRATION IN LONDON, ENGLISH LAW TO APPLY
-O'W AS PER CLEAN GCN 94 WITH LOGICALLY AMENDMENTS AS PER MAIN TERMS AGREED
-COMM 3.75 PCT
END
```

# EXHIBIT
## "C"

DRAFT  SURVEY  REPORT                MRP.ITD. № 10.07-18

ON BEHALF OF MESSRS.      KULBERG FINANCES INC.
 THIS IS TO CERTIFY  that we have attended on board the named vessel, prior to
and on completion of loading, a bulk of         SUNCAKES.           In order to
ascertain the actual weight of cargo loaded into the holds           № 1.
m/v      MY SHIP.        Berthed in port    MARIUPOL.
Flag      SLOVAK REPUBLIC.      GRT      1998.            NRT 1075.
Loading  commenced on the      26.10.2007      at      2:00            LT
Loading  completed  on the      29.10.2007      at      16:40          LT

|  |  | INITIAL |  | FINAL |
|---|---|---|---|---|
| WATER SURFACE CONDITION |  | Swell up to 0,3 m |  | Swell up to 0,3 m |

### DRAFT

| | INITIAL | | FINAL |
|---|---|---|---|
| 1.  Mean forward corrected to F.P. | 0,9841 | M | 4,9500 |
| 2.  Mean aft corrected to A.P. | 3,5234 | M | 5,7485 |
| 3.  Mean midship corrected to M.P. | 2,1932 | M | 5,3279 |
| 4.  FOR. and  AFT. Mean ((1)+(2))/2 | 2,2538 | M | 5,3493 |
| 5.  Mean of Means ((3)+(4))/2 | 2,2235 | M | 5,3386 |
| 6.  Corrected for deformation ((3)+(5))/2 | 2,2084 | M | 5,3333 |

### DISPLACEMENT

| | INITIAL | | FINAL |
|---|---|---|---|
| 8.  From tables for means draft corrected (6) | 1449,270 | MT | 3808,739 |
| 9.  Trim correction ( 1st + 2nd ) | 20,912 | MT | 18,098 |
| 10. List correction | 0,000 | MT | 0,000 |
| 11. Corrected displacement (  8 + 9 + 10 ) | 1470,182 | MT | 3826,837 |
| Mean density of water | 1,0040 | t/m3 | 1,0040 |
| 12. Correction for density | -30,121 | MT | -78,403 |
| 13. Displacement corrected for density  ( 11 ± 12 ) | 1440,061 | MT | 3748,434 |

### KNOWN WEIGHT

| | INITIAL | | FINAL |
|---|---|---|---|
| Ballast | 263,820 | MT | 263,820 |
| Fresh water | 28,000 | MT | 20,522 |
| Fuel oil | 0,000 | MT | 0,000 |
| Diesel oil | 43,000 | MT | 42,400 |
| Lub-oil | 3,737 | MT | 3,737 |
| Other | 0,000 | MT | 0,000 |
| TOTAL | 338,557 | MT | 330,479 |

| | INITIAL | | FINAL |
|---|---|---|---|
| 15. UNKNOWN FACTOR ( Stores miscellaneous) | 65,904 | MT | 65,904 |
| 16. LIGHT DISPLACEMENT | 1035,600 | MT | 1035,600 |
| 17. PREVIOUSLY MANIFESTED CARGO |  | MT |  |
| CARGO  LOADED |  | MT | 2316,451 |

Name and signature of Surveyor                    / Artem Nykonets

Name and signature of Captain                        DERYA YILMAZ

# EXHIBIT "D"

SETTLEMENT AGREEMENT

RE. CONTRACT NR. 358.071026

SELLERS: KULBERG FINANCES, INC

BUYERS: INTERBULK LLC

RECEIVERS: ONALLAR YEM SAN.

PARTIES AGREE AS FOLLOWS:

1. SELLER TO COMPENSATE DIRECTLY TO RECEIVERS USD 24,000 PAYABLE
   IMMEDIATELY AGAINST PRESENTATION OF RECEIVER'S DEBIT NOTE FAX
   COPY.
2. RECEIVERS WITHDROW THEIR CLAIM IN COURT AGAINST "STIBEL
   SHIPPING" AND M/V "MY SHIP" AFTER RECEIPT OF FUNDS FROM SELLERS.
3. PARTIES HAVE NO FURTHER CLAIMS TO EACH OTHER REGARDING
   CONTRACT 358.071026 AFTER EXECUTION OF POINTS NR. 1 AND NR. 2



SELLERS

_____BUYERS

_____RECEIVERS

# SETTLEMENT AGREEMENT

RE. CONTRACT NR. 358.071026

SELLERS: KULBERG FINANCES, INC

BUYERS: INTERBULK LLC

RECEIVERS: ONALLAR YEM SAN.

PARTIES AGREE AS FOLLOWS:

1. SELLER TO COMPENSATE DIRECTLY TO RECEIVERS USD 24,000 PAYABLE IMMEDIATELY AGAINST PRESENTATION OF RECEIVER'S DEBIT NOTE FAX COPY
2. RECEIVERS WITHDROW THEIR CLAIM IN COURT AGAINST "STIBEL SHIPPING" AND M/V "MY SHIP" AFTER RECEIPT OF FUNDS FROM SELLERS.
3. PARTIES HAVE NO FURTHER CLAIMS TO EACH OTHER REGARDING CONTRACT 358.071026 AFTER EXECUTION OF POINTS NR. 1 AND NR. 2



_____ SELLERS

_____ BUYERS

_____ RECEIVERS

# EXHIBIT
## "E"

| 1. Agents | SERPEN |
|---|---|

SERPEN
SHIP AGENCY CO.LTD.
Istiklal Cad. No:8/4
10200 Bandırma / TURKEY
Phone    (+90 266)    7156006 (4 Lines)
Fax       (+90 266)    7151927
Telex     (0  '607)    58075 srpn tr or 58076 spen tr
E-Mail    serpen@superonline.com
Web       www.serpenship.com

83 - 0

STANDART STATEMENT OF FACTS
RECOMMENDED BY
THE BALTIC & INTERNATIONAL MARITIME CONFERENCE
(BIMCO)
AND FEDERATION OF NATIONAL ASSOCIATIONS
OF SHIP BROKERS AND AGENTS ( FONASBA )

| 2.Vessel's Name | M/V " MY SHIP " | 3.Port | BANDIRMA PORT / TURKEY |
|---|---|---|---|

DETAILS OF DAILY WORKING *

Page No. 02

| Date | Day | Hours Worked | | Hours Stopped | | Operations Performed As Follows ; |
|---|---|---|---|---|---|---|
| | | From | To | From | To | |
| 07.11.2007 | WEDNESDAY | 16 30 | 24 00 | | | WORKED BY 1 SHORE CRANE(GRAB) |
| 08.11.2007 | THURSDAY | | | 00 00 | 08 30 | NO WORK DUE TO GANGS ARE NOT AVALIABLE |
| 08.11.2007 | THURSDAY | 08 30 | 15 30 | | | WORKED BY 1 SHORE CRANE(GRAB) |
| 08.11.2007 | THURSDAY | | | 15 30 | 20 30 | NO WORK DUE TO RAIN |
| 08.11.2007 | THURSDAY | 20 30 | 24 00 | | | WORKED BY 1 SHORE CRANE(GRAB) |
| 09.11.2007 | FRIDAY | | | 00 00 | 05 30 | NO WORK DUE TO GANGS ARE NOT AVALIABLE |
| 09.11.2007 | FRIDAY | | | 05 30 | 08 30 | NO WORK DUE TO RAIN |
| 09.11.2007 | FRIDAY | 08 30 | 23 30 | | | WORKED BY 1 SHORE CRANE(GRAB) |
| 09.11.2007 | FRIDAY | | | 23 30 | 24 00 | NO WORK |
| 10.11.2007 | SATURDAY | | | 00 00 | 08 00 | NO WORK DUE TO GANGS ARE NOT AVALIABLE |
| 10.11.2007 | SATURDAY | | | 08 00 | 24 00 | NO WORK DUE TO RAIN/STRONG WIND BAD WEATHER COND. |
| 11.11.2007 | SUNDAY | | | 00 00 | 24 00 | NO WORK DUE TO WEEKEND HOLIDAY |
| 12.11.2007 | MONDAY | | | 00 00 | 08 30 | NO WORK DUE TO GANGS ARE NOT AVALIABLE |
| 12.11.2007 | MONDAY | | | 08 30 | 13 30 | NO WORK |
| 12.11.2007 | MONDAY | 13 30 | *1615* | | | WORKED AND DISCHARGE COMPLETED |

MASTER'S REMARKS :          ALL CARGO HAVE BEEN DISCHARGED AS PER B/L & CARGO MANIFEST .ALL SHIP'S HOLDS WERE EMPTY
BEFORE SAILING .NO ANY DAMAGE OCCURED TO SHIP BY STEVEDORES DURING DISCHARGE

*09.11.2007. FRIDAY 2330 - 2400 NO WORK*
*10.11.2007 SATURDAY 0000 0800 NO WORK*
*All cargo have been discharged as per draught survey*
*All ship's hold was empty before sailing*

GENERAL REMARKS :          ALL CARGO HAVE BEEN DISCHARGED BY SHORE CRANES
AND ALL DISCHARGED CARGO HAVE BEEN WEIGHTED BY BANDIRMA CUSTOM AUTHORI-
TIES OFFICIAL WEIGHT BRIDGE AND ACCORDING TO THE WEIGHT BRIDGE DISCHARGE
QUANTITY OF CARGOES ;

1&2 ÖNALLAR YEM SAN          B/L Q.    2415,700 MTS    SFSM    TOT.DISCH.Q. *2318.900* KGS

| Date & Place | Name & Signature Of Master |
|---|---|
| 12.11.2007          BANDIRMA PORT / TURKEY | Capt.    DERYA YILMAZ |



| Name & Signature ( Agents ) | Name & Signature (For The Charterer's/Shipper's/Receiver's) On Behalf Of |
|---|---|
| SERPEN SHIP AGENCY CO.LTD. 10200 BANDIRMA / TURKEY | ÖNALLAR YEM ZAHİRECİLİK GIDA İNŞ.MALZ. TÜK.MALLÇ NAK.OTOM.TRANTOR.INS.PETR.URUNLERI SOGUK HAVA TESIS SAN.VE TIC.LTD.STI. MUSTAFAKEMALPAŞA BURSA |

STANDARD STATEMENT OF FACTS

83 - 0

RECOMMENDED BY
THE BALTIC & INTERNATIONAL MARITIME CONFERENCE (BIMCO)
AND FEDERATION OF NATIONAL ASSOCIATIONS
OF SHIP BROKERS AND AGENTS ( PONASBA )

SHIP AGENCY CO.LTD
Istiklal Cad. No:8/4
10200 Bandirma / TURKEY
Phone    (+90 266)  7156006 (4 Lines)
Fax      (+90 266)  7151927
Telex    (0   607)  58075 srpn tr or 58076 spen tr
E-Mail   serpen@superonline.com
Web      www.serpenship.com

| 2.Vessel's Name | M/V " MY SHIP " | | 3.Port | BANDIRMA PORT / TURKEY |
|---|---|---|---|---|
| 4. Owner's/Disp. Owner's | UNICOR INT. SHIPPING CO | | 5.Vessel Berthed | 05.11.2007 at 18:10  Hrs.Lt. |
| | | | 6.Loading Commenced | 7.Loading Completed |
| 8.Cargo  UKRAINIAN SUNFLOWER SEEDS EXTRACTION MEAL IN BULK | | | 9.Discharging  Commenced  07.11.2007 at  13:30  Hrs.Lt. | 10.Discharging Completed  12.11.2007 at  1415  Hrs.Lt. |
| | | | 11.Cargo Documents On Board  12.11.2007 at  1415  Hrs.Lt. | 12.Vessel Sailed  12.11.2007 at           Hrs.lt. |
| 13. Charter Party * | | | | |
| 15. Bill Of Lading Weight/Quantity  2.415.700.-KGS | 16. Outturn Weight/Quantity  2318.350 Kg | | 14. Working/Meal Hours Of The Port *  0330-0430/1200-1300/2000-2030     Meal Break  0000-0030/0800-0830/1600-6030     Shift Change Time | |
| 17. Vessel Arrived On Road  02.11.2007 at  04:30 Hrs.Lt. | | | 18. | |
| 19. Notice Of Readiness Tendered  02.11.2007 at 04:30 Hrs.Lt. | | | 20.Notice Of Readiness Accepted  02.11.2007 AS PER C/P | |
| 21.Next Tide Avaliable | | | 22. | |
| 23. Pilot On Board On Arrival  05.11.2007 at 17:40 Hrs.Lt. | | | 24.Free Pratuque Granded | |

DETAILS OF DAILY WORKING *

Page No. 01

| Date | Day | Hours Worked | | Hours Stopped | | Operations Performed As Follows ; |
|---|---|---|---|---|---|---|
| | | From | To | From | To | |
| 02.11.2007 | FRIDAY | | | 04 30 | 24 00 | VESSEL ARRIVED TO BANDIRMA,DROPPED ANCHOR WAITING ON ANCH.  WAITING ON ANCHOR (RAIN BETWEEN 11:20-18:30 HRS.LT.)  VESSEL CLEARED BY SANT.,CUST.& IMMIGRATION CONTS.@0900HRS.LT. |
| 03.11.2007 | SATURDAY | | | 00 00 | 24 00 | WAITING ON ANCHOR DUE TO JETTY OCCUPIED |
| 04.11.2007 | SUNDAY | | | 00 00 | 24 00 | WAITING ON ANCHOR DUE TO JETTY OCCUPIED |
| 05.11.2007 | MONDAY | | | 00 00 | 17 40 | WAITING ON ANCH. DUE TO JETTY OC. (RAIN BETWEEN 0645-1810 HRS.LT.) |
| 05.11.2007 | MONDAY | 17 40 | 18 10 | | | P.O.B. BERTHING OPERATIONS BERTHED ALL FAST TO JETTY NO 04 P.OFF |
| 05.11.2007 | MONDAY | 18 10 | 24 00 | | | NO WORK DUE TO RAIN RAIN & STRONG WIND |
| 06.11.2007 | TUESDAY | | | 00 00 | 24 00 | NO WORK DUE TO RAIN RAIN & STRONG WIND /BAD WEATHER CONDT. |
| 07.11.2007 | WEDNESDAY | | | 00 00 | 13 30 | NO WORK DUE TO STRONG WIND/BAD WEATHER CONDITIONS |
| 07.11.2007 | WEDNESDAY | 13 30 | 13 45 | | | DISCHARGE COMMENCED & WORKED |
| 07.11.2007 | WEDNESDAY | | | 13 45 | 16 30 | NO WORK DUE TO RAIN |

| Date & Place  12.11.2007      BANDIRMA PORT / TURKEY | Name & Signature Of Master  Capt.   DERYA YILMAZ |
|---|---|
| Name & Signature ( Agents )  SERPEN SHIP AGENCY CO.LTD.  10200 BANDIRMA / TURKEY | Name & Signature (For The Charterer's/Shipper's/Receiver's) On Behalf Of  ONALLAR YEM ZAHIRECILIK GIDA INS.MALZ. TUK.MALLC  NAK.OTOM.TRANTOR.INS.PETR.URUNLERI SOGUK HAVA  TESIS SAN.VE TIC.LTD.STI. MUSTAFAKEMALPASA BURSA |

SERPEN
SHIP AGENCY CO.LTD.

İstiklal Cad. No:8/4
10200 Bandırma / TURKIYE

| | |
|---|---|
| Phone | 0090 266 7156006 (4 Lines) or 7181053 or 7182243 |
| Fax | 0090 266 7151927 or 7184667 |
| Telex | 0607 58075 srpn tr    or    58076 spen tr |
| E-Mail | serpen@superonline.com |
| Web | www.serpenship.com |

Bandırma / TURKEY    02th NOVEMBER 2007

### NOTICE OF READINESS

MESSRS;    ÖNALLAR YEM,ZAHİRECLİK GIDA,İNŞ.MLZ.DAY.
TÜK.MALLNAKLİYE OTOMOTİV TRAKTÖR İNŞAAT
PETROL ÜRÜNLERİ SOĞUK HAVA TESİS.SAN.VE TİC.LTD.ŞTİ.
İZMİR YOLU GÜLLÜCE MEVKİİ 16507 MUSTAFAKEMALPAŞA
BURSA TÜRKİYE

Dear Sirs ,

Please be advised by this Notice Of Readiness  that on the
02nd NOVEMBER   2007 at 04:30  Hours (Local Time) M/V " MYSHIP "
arrived to BANDIRMA/TURKEY and vessel is in all respects ready to commence to
DISCHARGE  the cargo of   ;        UKRAINIAN SUNFLOWER SEED
EXTRACTION MEAL IN BULK 2415,700 METRIC TONS
according to the terms , conditions and exceptions of relative Charter Party.

Yours Faithfully

Notice Of Readiness tendered at        04:30  Hours(Local Time) on   02nd NOVEMBER  2007

Notice Of Readiness received at        08:30  Hours(Local Time) on   02nd NOVEMBER  2007

Notice Of Readiness accepted at                Hours(Local Time) on   02nd NOVEMBER  2007

Accepted As Per Governing Charter Party