UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SIBEL SHIPPING LTD.,

Plaintiff, 07 CV 11216

-v-

KULBERG FINANCES, INC. AGROSERVICE LTD., UKRAGROIMPEX LTD., and INTERBULK TRADE LLC

Defendants.
-----------------------------------------------------x

**AFFIRMATION AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KULBERG FINANCES INC.'S, MOTION TO VACATE OR REDUCE MARITIME ATTACHMENT & TO COMPEL PLAINTIFF TO PROVIDE COUNTER SECURITY**

**GEORGE M. CHALOS, Esq.**, being duly sworn, deposes and says:

I am a member of the bar of this Court and a member of the firm CHALOS & CO, P.C., counsel for Plaintiff, SIBEL SHIPPING LTD., in the above referenced matter. I am familiar with the circumstances of this case and submit this Affirmation and Incorporated Memorandum of Law in opposition to defendant, KULBERG FINANCES Inc.'s, (hereinafter "KULBERG"), motion to vacate or reduce maritime attachment and to compel Plaintiff to Provide Counter Security for Defendant's counterclaim, which was filed on or about May 30, 2008.

**POINT I**

**PLAINTIFF, SIBEL SHIPPING, HAS PROPERLY OBTAINED THE RULE B MARTIME ATTACHMENT AS AGAINST DEFENDANT, KULBERG**

"Maritime Attachment is a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." *See* Aqua Stoli

Shipping, Ltd v. Gardner Smith Pty, Ltd., 460 F.3d 434, 437 (2d Cir 2006).[1] See also Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44, 47 (2d Cir 1996). The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. Aqua Stoli, supra at 437; See also, U.S. Const. art. III § 2.

Rule B provides, in relevant part, the following:

> *If a defendant is not found within the district ...a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible ... property – up to the amount sued for – in the hands of garnishees named in the process . . . The court must review the complaint and the affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.*

Fed. R. Civ. P. Supp. Rule B(1).

If, as is the case here, a plaintiff's filings are in compliance with the requirements of Rule B, the court must (and did) enter an order authorizing the attachment. *See* Aqua Stoli, at p. 438.

The majority of courts in this district have understood Aqua Stoli to require the application of the *prima facie* standard when considering the adequacy of a claim in a maritime vacatur motion. *See* Dolco Invs., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007); SPL Shipping Ltd., 2007 U.S. Dist. LEXIS 18562, 2007 WL 831810, at 3; Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06-cv-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006). Under this standard, the Court may look only to the Complaint to determine whether the plaintiff has alleged a valid admiralty

[1] As the Court is undoubtedly aware, Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, 460 F.3d 434 (2d Cir. 2006), is the leading Second Circuit case on Rule B attachments.

claim against the defendant. *See* SPL Shipping, 2007 U.S. Dist. LEXIS 18562, 2007 WL 831810, at 3; *see also* Aqua Stoli, 460 F.3d at 445; Tide Line, 2006 U.S. Dist. LEXIS 95870, at 16. It is axiomatic to state that "maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing." *See* Transportes Navieros Y Terrestes v. Fairmount Heavy Transp. N.V., No. 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) (citation omitted).

Here, there can be no dispute that Plaintiff, SIBEL SHIPPING, has properly pled a prima facie maritime claim and has otherwise met the threshold pleading requirements of Rule B, which were a condition precedent to this Honorable Court's issuance of its Order for the Issuance of Process for Maritime Attachment and Garnishment.

**POINT II**

**DEFENDANT'S MOTION TO VACATE THE ATTACHMENT IS WITHOUT MERIT**

It is common ground that, at a Rule E hearing, the burden is on the plaintiff to demonstrate why the attachment should not be vacated. Courts in this district have understood Aqua Stoli to require the application of the prima facie standard when considering the adequacy of a claim in a maritime vacatur motion. *See* Ronda Ship Management Inc. v. Doha Asian Games Organizing Committee, 511 F.Supp.2d 399 (S.D.N.Y. 2007): *See also* Dolco Inves., Ltd. V. Moonriver Dev., Ltd., 486 F.Supp. 2d 261, 266 (S.D.N.Y. 2007); SPL Shipping Ltd., 2007 U.S. Dist. LEXIS 18562; Tide Line, Inc. v. Eastrade Commodities, Inc. 2006 Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006). Under this standard, the Court may look only to the Complaint to determine whether the Plaintiff has alleged a valid admiralty claim against the defendant. *Id.* "Maritime

plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing." *See* Ronda Ship Management Inc., *supra* at 404; citing Transportes Navieros Y Terrestes, S.A. De D.V. v. Fairmount Heavy Transp. N.V., *supra.*

In order to sustain its burden to maintain the attachment (and to defeat KULBERG'S motion to vacate), Plaintiff, SIBEL SHIPPING, need only to demonstrate: 1) that the cause of action arises within the Court's admiralty jurisdiction; 2) the defendant cannot be found within the district; and 3) the defendant has property within the district that has been restrained. *See* Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) and Aqua Stoli, *supra*. Moreover, Aqua Stoli implies that a plaintiff need not provide any evidence showing that it has a claim against the defendant to satisfy its burden under Rule E(4)(f). *See* Ronda Ship Management Inc., *supra* at 404; citing Tide Line, 2006 U.S. Dist. LEXIS 95870, at *16.

Here, SIBEL SHIPPING's attachment at issue squarely meets all three (3) burdens. In fact, no challenge to any of these prongs has been presented by defendant. Rather, defendant has conceded that SIBEL SHIPPING has a valid prima facie admiralty claim. *See* Answer at para 7; *See also* Skoufalos Affidavit at paras 2, 5 and 8. Similarly, defendant has conceded that it "can not be found within the district" and has readily admitted that its' "property may be found within the district." *See* Answer at para 16; *See also* Skoufalos Affidavit at para 3. Moreover, defendant has not sought to vacate the attachment on the basis of either a statutory or maritime law bar to the attachment, as no such impediment exists in this matter. Instead, defendant appears to have only sought to challenge the quantum of the attachment.

Accordingly, it is respectfully requested that this Honorable Court enter an order denying defendant's motion seeking to vacate the attachment.

**POINT III**

**DEFENDANT'S MOTION TO REDUCE THE QUANTUM OF THE ATTACHMENT IS WITHOUT MERIT.**

***a. There is no basis to further reduce Plaintiff's security as Plaintiff has sufficiently pled its claim; has repeatedly provided defendant with factual and documentary support for its claim; and has already reduced its attachment by the amount previously requested by defendant.***

Despite its failure to meaningfully challenge the propriety of the attachment, defendant requests the Court to reduce the quantum presently being restrained at the Bank of New York. In support of its argument, defendant has improperly sought to have this court analyze the merits of the underlying dispute between the parties and to engage in an evaluation of the evidence defendant will assumedly seek to present in the London arbitration proceeding. As an initial matter, defendant's argument misstates the law. It is well settled that "whenever security is taken and a motion made, the court may reduce the amount of security for "good cause shown." *See* Ronda Ship Management Inc., *supra* at 405; Daeshin Shipping Co. Ltd. V. Meridian Bulk Carriers, Ltd., No 05 Civ. 7173 (NRB), 2005 U.S. Dist. LEXIS 22409, 2005 WL 2446236, at *1 (S.D.N.Y. Oct. 3, 2005). Here, defendant has failed to argue, let alone present any admissible evidence, which could properly be considered "good cause shown" to reduce the pending amount presently under attachment. Additionally, as defendant rightly states in its memorandum of law, Plaintiff "need not prove its damages with exactitude" at this stage, but rather must simply satisfy the Court that its claims are not frivolous. *See* Defendant's Memorandum of Law at p. 7. Defendant has failed to argue, let alone make a "good

cause" showing, that Plaintiff's claim is, in any respect, "frivolous." Rather, defendant spends much of its ink trying to paint a picture to the Court that the amount of Plaintiff's claim, and subsequent ex parte Rule B attachment application, is overstated. In this regard, defendant has provided the Court with a stack of incomplete, cherry-picked messages sent to the undersigned in support of the propositions that: "Plaintiff has provided no evidence to support the remaining portion of its claim" and "has not provided any evidence in support of its claims for the alleged i) loss of use of the vessel; ii) costs of the letter of guarantee; iii) Turkish legal fees; and iv) customs fine." *See* Skoufalos Affidavit, paras 7 & 8. Again, as a matter of law, Plaintiff is not required to provide any "evidence" at this stage of the proceeding. Nevertheless, defendant's assertions are, at best mistaken, as both defendant's U.S. counsel, as well as defendant's foreign counsel, have repeatedly been provided detailed information concerning the factual basis, as well as the documentary support, for Plaintiff's claim.[2]

For the Court's ready reference, the undersigned affirms under the penalty of perjury that: attached hereto as Exhibit "A" a true and complete copy of the Email and attachments sent to Attorney Skoufalos by the undersigned on February 5, 2008 at 12:38 p.m., which detailed the nature of Plaintiff's claims.

For the Court's ready reference, the undersigned affirms under the penalty of perjury that: attached hereto as Exhibit "B" a true and complete copy of the Email sent to Attorney Skoufalos on February 11, 2008 at 10:10 a.m., which also detailed both the nature and substance of Plaintiff's claims, as well as provided a proposal whereby the matter would be amicably concluded.

---

[2] Undersigned counsel has been informed that there have been prior and continuing discussions and negotiations between Plaintiff's foreign counsel, Caglar Coskunsu, Esq. and defendant's foreign counsel, Vlad Markelov, Esq.; both of whom being well known and highly regarded by the undersigned.

For the Court's ready reference, the undersigned affirms under the penalty of perjury that: attached hereto as Exhibit "C" is a true and complete copy of an Email received by the undersigned from Attorney Skoufalos on March 5, 2008 at 4:32 p.m., wherein counsel for defendant (1) acknowledged receipt of the preliminary breakdown and supporting documents for Plaintiff's claims, and (2) requested that "the attachment should be immediately reduced in the amount of approx. $50,000".[3]

For the Court's ready reference, the undersigned affirms under the penalty of perjury that: attached hereto as Exhibit "D" a true and complete copy of the Email sent to Attorney Skoufalos on March 11, 2008 at 3:39 p.m.

In accordance with the request of defendant's counsel, the garnishee bank was instructed to release USD 47,500 from restraint. For the Court's ready reference, the undersigned affirms under the penalty of perjury that: attached hereto as Exhibit "E" is a true and complete copy of the Email instructions sent to counsel for the garnishee bank, Bank of NY, on March 12, 2008 at 10:56 a.m. with respect to the release of funds from attachment requested by defendant.[4]

In summary, Plaintiff has readily and repeatedly advised defendant that as a result of defendant's breach, Plaintiff has been forced to suffer damages for, *inter alia,* the following line items in the following approximate amounts:

---

[3] Previously, and as Attorney Skoufalos has confirmed in his Affidavit in support of defendant's motion, Plaintiff had attached USD142,500 on December 20, 2007 in satisfaction of this Court's attachment order. *See* Skoufalos Affidavit, para 3. Subsequently, in acknowledging its liability for the detention of the vessel in Bandirma, as well as the corresponding litigation claims commenced in Turkey by the cargo receiver, defendant reportedly settled the claim directly. Thereafter, once the Turkish litigation claims (including the receiver's claims against Plaintiff were discontinued), defendant requested, and Plaintiff voluntarily agreed, to reduce the quantum of the funds being held under attachment from USD 142,500 to USD 95,000 (i.e. a reduction of "approx. $50,000."

[4] There is no dispute that USD 47,500 was released from attachment. *See* Skoufalos Affidavit, para 5.

1. losses related to the detention of the vessel due to arrest at Bandirma (estimated to be not less than USD 31,500);

2. Turkish Customs fine (now estimated to be USD 4,500);

3. costs of the letter of guarantee (USD 842);

4. Turkish legal fees (USD 2,645); and

5. Legal costs and fees for London Arbitration (USD 25,000)

6. Legal costs and fees for U.S. proceedings to be recovered in London Arbitration (USD 15,000).

Clearly, the USD 95,000 presently being held at Bank of New York is well within what the Rule B and Rule E allow. It is, of course, within the sound discretion of the district court to allow the attachment of up to twice the amount of the plaintiff's claim. Pursuant to Fed.R.Civ.P.Supp.Rule E(5)(a), "[w]henever process of maritime attachment and garnishment or process in rem is issued…the court shall fix the principal sum…at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) **twice** the amount of the plaintiff's claim…" *See* Fed.R.Civ.P.Supp.Rule E(5)(a) (emphasis added). In Gulf Marine & Industrial Supplies, Inc. and J&J Enterprises v. New Filipino Maritime Agencies, Inc., 2001 U.S. Dist. LEXIS 4475 (E.D.La. 2001), the District Court held that twice the amount of the claim was appropriate, writing "the attachment and garnishment will be upheld in the amount of twice the amount of plaintiff's claim…" Id. at 13.[5]

[5] *See also,* Naftaservice Trading v. Alaric Co., 2008 U.S. Dist. LEXIS 3229 (S.D.N.Y. Jan. 15, 2008), wherein Judge Haight held that he was not bound by the "opinions" of [his] "Eastern District of Louisiana colleagues."

Accordingly, for the reasons more fully set forth above, Plaintiff respectfully submits that defendant's motion to reduce the amount of the attachment is without merit.

*b. The declaration of Oleg Khaladzhy should be struck and disregarded in its entirety by this Honorable Court.*

KULBERG's further attempts to challenge the quantum of the attachment by way of a wholly inadmissible, self-serving statement made by Oleg Khaladzhy; an individual unknown to Plaintiff and apparently an individual who has no personal knowledge of the facts and circumstances of this case. Remarkably, the declaration of Mr. Khaladzhy glaringly fails to offer any admissible evidence concerning the underlying dispute and/or the quantum claimed by SIBEL SHIPPING and should be wholly disregarded by this Court.

In order to meet the standards for self-authentication under Fed. R. Evid. 902(3), [6] a foreign affidavit must generally be accompanied by a "final certification," by either an embassy or consular agent of the United States or a diplomatic or consular official of the foreign country, as to the genuineness of the signature and the official position of the attesting person. See Fed. R. Evid. 902(3). The Khaladzhy affidavit provides no such certification as to the genuineness of his signature, nor his position. *See* BS Sun Shipping Monrovia v. Citgo Petroleum Corp., 509 F. Supp. 2d 334 (S.D.N.Y. 2007); *See also*, Pace Shipping Servs. Network S.A. v. M/V Ocean D, 2003 U.S. Dist. LEXIS 5234, at *4-5 (E.D.La. 2003) (Court declined to accept translated copies of foreign pleadings without

[6] Fed. R. Evid. 902(3), "Self-Authentication," states in relevant part: "Foreign public documents. A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States."

certification by a U.S. or foreign consular official, stating, "There is nothing that allows this Court to determine the genuineness or certify the markings on the documents.").

Moreover, defendant offers nothing of substance to demonstrate that Mr. Khaladzhy has actual personal knowledge of the underlying claim, the commencement of the litigation, the attachment of KULBERG's electronic funds transfer and/or is otherwise competent to testify to the matters contained within the declaration. Defendant has glaringly failed to demonstrate any foundation for the Khaladzhy declaration, as all "key events" of this case occurred well before the declarant was even vested with the limited power of attorney on behalf of the company (which purportedly began on either January 28, 2008 or February 4, 2008 and will be expiring on March 31, 2009). At a minimum, the Kahaldadzy declaration is "out of time" from the events at issue.[7] *See* Nippon Fire v. M/V Tourcoing, 979 F. Supp. 206 (S.D.N.Y. 1997), aff'd, 167 F.3d 99 (2d Cir. 1999).

In Nippon Fire, Judge Cedarbaum refused to grant summary judgment where the defendant failed to submit evidence establishing an element essential to its defense -- the existence of a particular contract -- and for which it was to bear the burden of proof at trial. Although the Nippon Fire defendant had established that a contract existed at some point, Judge Cedarbaum relied on the fact that "[defendant] has not submitted an affidavit or other evidence to suggest that the [earlier] contract continued in force without further written agreement" to deny summary judgment. *Id.*

---

[7] Here, the underlying claim arose from a defendant's breach of an October 10, 2007 voyage charter party; cargo claims presented by the cargo receiver against defendant in early November; and subsequent detention of the vessel in Bandirma, Turkey beginning on November 9, 2007. Thereafter, Plaintiff commenced suit on December 13, 2007. *See* Skoufalos Affidavit submitted in support of KULBERG's motion at para 2. On that same day, this Honorable Court issued and order directing the issuance of process of maritime attachment and garnishment against KULBERG. *Id.* One week later, on December 20, 2007, the attachment at issue occurred at the Bank of New York. *Id. at para 3.*

It is, of course, necessary for a party submitting a supporting affidavit in connection with a motion, to establish that the affiant's testimony is based upon personal knowledge and to affirmatively show that the affiant is competent to testify to the matters stated therein. *See* BS Sun Shipping Monrovia v. Citgo Petroleum Corp., *supra*; *See also*, e.g. Fed. R. Civ. P 56(e). Here, the Khaladzhy declaration fails to demonstrate that this individual was an officer, director or employee of KULBERG and/or otherwise has personal, first-hand knowledge of the underlying transaction and dispute.[8]

Moreover, despite the purported power of attorney attached as Exhibit "A" to the Khaladzhy Affidavit, there are significant inconsistencies and chronological anomalies which compel this court to disregard the Khaladzhy affidavit in its entirety. The purported power of attorney seems to indicate that the Director of the Delaware corporation, Kulberg, signed and executed the document ***in Cyprus*** on January 29, 2008. The purported certifying apostille is not dated until February 4, 2008. Despite the existence of this questionable power of attorney, there remains an insufficient basis for this Court to consider the statements made by the declarant concerning events which are not within his personal knowledge. *See* Pace Shipping Servs. Network S.A. v. M/V Ocean D, 2003 U.S. Dist. LEXIS 5234, at *5 (statement by foreign lawyer which "attempt[s] to maintain the genuineness of the pleadings…falls short of the standards for authentication").

---

[8] Interestingly, KULBERG is a Delaware corporation with a principal place of business at 15 East North Street Dover, Delaware (*See* Complaint at paragraph 3 and KULBERG Answer at para. 3 "admitting the allegations contained in paragraph "3" of the Complaint and Power of Attorney submitted as Exhibit "A" to the Khaladzhy declaration); Mr. Khaladzhy is and was "a citizen of Ukraine and resident of the City of Donetsk, Ukraine" (*See* Khaladzh Declaration, para 2); and the underlying claims arise from cargo claims and corresponding detention of a vessel in Bandirma, Turkey.

Accordingly, it is respectfully submitted that the Court should strike the Khaladzhy declaration and not consider the self-serving, inadmissible assertions contained therein.

c. ***Assuming, arguendo, that the Court considers the Khaladzhy declaration, it is of little to no probative value to the issue before the Court.***

Assuming, *arguendo*, that the Court might consider the Khaladzy declaration, it is of "little or no probative value" to the issue currently before the Court. In addition to the deficiencies noted above and Mr. Khaladzhy's inability to demonstrate personal knowledge of the matters for which his testimony is offered, the substantive merits of Plaintiff's claim are not for this court to decide. As counsel for defendant has repeatedly (and correctly) pointed out, *"Judge Kaplan is not going to be the trier of fact that decides the merits of this dispute, including Kulberg's counterclaim. Those merits will be decided by London arbitrators." See* Skoufalos Email sent to the undersigned on March 14, 2008 at 2:50 p.m. and submitted to this Court under Exhibit "D" to the Skoufalos Affidavit.

Moreover, Aqua Stoli clearly provides that a plaintiff need not provide evidence showing that it has a claim against the defendant to satisfy its burden under Rule E(4)(f). Tide Line, 2006 U.S. Dist LEXIS 95870, at 16. The *prima facie* standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts. Id. 2006 U.S. Dist. LEXIS 95870 at 7.

Accordingly, assuming the Court considers the Khaladzhy declaration, it is respectfully submitted that the Court should not consider the factual arguments presented therein as the substantive merits of the underlying dispute are properly to be adjudicated by London arbitrators.

## POINT IV

## TO THE EXTENT THIS COURT MAY FIND THAT PLAINTIFF HAS NOT PLED ITS CLAIM WITH SUFFICIENT SPECIFICITY, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND ITS COMPLAINT ACCORDINGLY

Although Plaintiff believes that it has properly pled its claim (and subsequently provided defendant with sufficient summaries of the nature and substance of its claim), Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend its pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed.R.Civ.P. 15(a).

The standard to be applied in deciding whether an amendment should be permitted under Rule 15(a) is a "lenient" one. *See* Tideline Inc. v. Eastrade Commodities, Inc. *supra*, citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). This Court, in the specific context of other Rule B attachment actions, has previously noted that, generally, "leave to amend should be granted absent evidence of undue delay, bad faith, undue prejudice or futility…" *See* World Reach Shipping Ltd. v. Industrial Carriers Inc., No. 06 Civ. 3756, 2006 WL 3316828, at *2 (S.D.N.Y. Nov. 9, 2006), citing Foman v. Davis, 371 U.S. 178, 182 (1962). See also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005) (Second Circuit jurisprudence holds that leave to amend should be denied for undue delay, bad faith, futility of the proposed amendment or resulting prejudice to opposing party). Here, there has not been any bad faith or undue delay by SIBEL SHIPPING in seeking to amend the pleading as defendant has just raised this objection to the Court.

Accordingly, to extend this Honorable Court may find that Plaintiff has failed to plead its claim with sufficient specificity, Plaintiff respectfully requests leave to amend its complaint.

**POINT V**

**DEFENDANT'S MOTION SEEKING TO COMPEL PLAINTIFF TO PROVIDE COUNTERSECURITY IS WITHOUT MERIT**

The overwhelming weight of authority among courts in this Circuit, and in other circuits, requires this Honorable Court to screen out frivolous claims upon review of a motion under Rule E (7). *See* Front Carriers Ltd. V. Transfield Er Cape Ltd. et. al., 2007 U.S. Dist. LEXIS 85177, at. *5; *See also* Finecom Shipping Ltd. v. Multi Trade Enterp. AG, No. 05 Civ.6695 (GEL), 2005 Dist. LEXIS 25761, 2005 WL 2838611, at *1 (S.D. N.Y. Oct. 25, 2005(Lynch, J.); Starboard Venture Shipping, Inc. v. Casinomar Transp. Inc., No. 93 Civ. 0644 (SS), 1993 U.S. Dist. LEXIS 15891, 1993 WL 464686, at *6 (S.D.N.Y. Nov. 9, 1993)("Courts have considered whether counterclaims might be frivolous before deciding to order countersecurity.")(Sotomayor, J.); *see also* Afram Lines Int'l, Inc. v. M/V Capetan Yiannis, 905 F.2d 347, 350 (11th Cir. 1990)("The Court should consider, if applicable, . . the extent to which the counterclaim may be deemed frivolous."); Titan Nav. Inc. v. Timsco, Inc., 808 F.2d 400.404 (5th Cir. 1987)("The court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant."). "The premise that countersecurity will not be required on the basis of frivolous claims is a sound one." *See* Finecom Shipping Ltd., *supra,* at *3-4.

Here, defendant has stated that it will present a counterclaim, (which apparently is an indemnity claim) for the USD 24,000[9] defendant paid to the Bandirma cargo receiver for delivery shortage claim. *See* Defendant's Counterclaim, at paras 2-7, 10-12. Regretfully, defendant's allegations are wholly frivolous, as the parties have previously expressly agreed that Plaintiff is not responsible for any claims arising from cargo quantity discrepancies. For the Court's ready reference, a copy of the charter party is attached hereto as Exhibit "F" (a copy of which having also been previously submitted to the Court as Exhibit "B" to the Khaladzhy declaration and incorporated herein by reference). Specifically, the parties agreed, "owners [Plaintiff] are not responsible for cargo qtty." Moreover, the dispute as to the quantity of cargo loaded was noted, as the Master of the vessel contemporaneously issued the Letter of Protext and the defendant issued letters of indemnity to Plaintiff in furtherance of the parties agreement that Plaintiff is not responsible for claims related to cargo quantity. *See* attached Exhibits "G" and "H," respectively

Additionally, it is respectfully submitted that defendant is attempting to impermissibly obtain a negotiating advantage by causing Plaintiff to incur excess litigation costs/expenses. It is well settled that Rule E(7) "is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit . . or, on that same logic, from maintaining an action." *See* North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648 at *10. *See also,* Result Shipping Co. v. Ferruzi Trading USA Inc., 56 F.3d 392, 399)(2d Cir. 1995).

---

[9] Defendant is seeking counter security in the amount of USD 68,584.38, which, at a minimum, is clearly is grossly overstated. *See* Defendant's Counterclaim, at para. 12. As more fully set forth above, Plaintiff respectfully submits that defendant's counterclaim is wholly frivolous and alleged solely to impermissibly gain a tactical advantage over Plaintiff.

Accordingly, it is respectfully requested that this Honorable Court enter an Order denying in all respects defendant's motion for countersecurity.

## CONCLUSION

WHEREFORE, and for the reasons more fully set forth above and attached,

Plaintiff, SIBEL SHIPPING, respectfully requests this Honorable Court enter an Order

denying KULBERG's motion to vacate or reduce the pending attachment and to compel

plaintiff to provide countersecurity, and for such other and further relief which the Court

deems appropriate under the circumstances.

Dated: Oyster Bay, New York
June 23, 2008

Respectfully submitted,

CHALOS & CO, P.C.
Attorneys for Plaintiff,
SIBEL SHIPPING LTD.

George M. Chalos (GC-8693)
123 South Street
Oyster Bay, New York 11771
Tel:    (516)-714-4300
Fax:    (866)-702-4577
Email:  gmc@chaloslaw.com

# EXHIBIT
# "A"

**George M. Chalos**

**From:** George M. Chalos
**Sent:** Tuesday, February 05, 2008 12:38 PM
**To:** 'pskoufalos@browngavalas.com'
**Cc:** George K. Kontakis
**Subject:** "My Ship" Rule B Attachment
**Importance:** High

WITHOUT PREJUDICE

Dear Peter:

Further to our prior exchanges, I forward (attached) copies of original documents from the Turkish court action commenced by cargo receivers, along with English translations of same.

In addition to the underlying claim and corresponding costs/expenses incurred in connection with same, it is our understanding that, as a consequence of a court action and an arrest order; a letter of guarantee was required to be provided to the Court of Bandirma and the vessel lost 9 days. Our Turkish co-counsel has confirmed that the relevant Court files are open to public access and the can be investigated through file number 2007/92 D.Is in 1st. Basic Court of Bandirma.

As far as our client's loss of earnings are concerned, a daily rate was assessed as USD 3,500 which is very reasonable, totalling USD 31,500 for 9 days. While it remains unclear as to whether your client has/will seek to amicably conclude a settlement with cargo receivers directly, our client can not agree any settlement unless the cargo receivers, (as claimants in the court action), provide a full and final release from all liabilities and return the bank letter of guarantee.

Also, it is my understanding that a Custom fine has not yet been issued by the relevant Custom Authorities, but a fine in an amount of approximately USD 9,000 is expected.

Finally, our client is also seeking legal fees in the amount of USD 5,500, which is payable to the cargo receivers' lawyer as a matter of Turkish law. In this regard, our co-counsel has advised that under applicable Turkish law, the claimant is entitled to receive such amount. Similarly, our client has been forced to incur similar legal costs in Turkey (exclusive of our costs) to defend the claim, which they believe Kulberg is liable (under both the charter party and letter of indemnity given by Kulberg).

I hope this sheds some light on your inquiries.

Brgds/George

George M. Chalos
CHALOS, O'CONNOR & DUFFY, LLP

Please visit our website at: www.codus-law.com

REPUBLIC OF TURKEY

BANDIRMA

CIVIL COURT OF FIRST INSTANCE

(MARITIME COURT)

2007/92 D. Is

(...)

HELD; The present statement has been signed in common and it has been held

1- To impose precautionary judgment over M/V MY SHIP owned by the opponent party and to arrest the vessel pursuant to the articles 101 etc. of the Code of Civil Procedure and to notify in written the concerned authorities upon a guarantee either in cash or in a letter of guarantee form issued conclusively and for an unlimited period of time in the amount of the 40% of USD 29,000.- is submitted, as in the preliminary expert report submitted, it was stated that there was a shortage of approximately 100 m/t of cargo on the vessel that amounts to USD 29,000-.

2- To grant to the expert 3 days period in order to submit his reports as 3 copies showing the net quantity of the damage after the discharge has been completed,

3- To pay the mentioned amounts to the entitled parties 12.11.2007

| Judge 36575 | Clerk | Court Attendant | Claimant's counsel |
|---|---|---|---|
| Signature | Signature | Signature | Signature |

Opponent Party – Vessel's Master Derya Yilmaz

Signature

A No 281067

Serial Number :7036459-1497318-3-1-8

Correspondence Number: 43947

AKBANK

15.11.2007

TURKISH REPUBLIC

BANDIRMA 1st CIVIL COURT OF FIRST INSTANCE

We, the undersigned, authorized to sign and represent our bank accept, declare and undertake on the account of our Bank that in case the Owners "Sibel Shipping Limited-Malta" deemed to be the unjust party on the file of the Bandirma 1st Civil Court Of First Instance under 2007/92 D.Is file number will be held liable by the Court and provided that our Bank will be notified by your side, our Bank as guarantor will irrevocably and unconditionally pay forthwith and without any delay upon your first written request the amount up to USD 28,500.- (twenty eight thousand and five hundred American dollars) with its interests accrued from the date in which the Bank has been notified of the request until the actual date of payment, without the need to make any protest or take any court decision by your side and guarantying that our Bank and/or the concerned party will not take any legal step.

This Bank Letter of Guarantee is conclusive and valid for an unlimited period of time and in case our bank is not notified by your side of any written compensation request in order to turn the letter into cash wholly or partially, both the Letter of Guarantee and commitment will be null and void.

This letter of guarantee is issued based on the instruction of Goztepe Branch.

Yours sincerely,
AKBANK T.A.S
BANDIRMA BRANCH

Akbank T.A.S
Bandirma Branch

Signature – Stamp

| SEMRA BAYRAKTAR | OZLEM SENTAS |
|---|---|
| Signature | Signature |
| Authorized 1 | Authorized 3 |

REPUBLIC OF TURKEY

BANDIRMA

CIVIL COURT OF FIRST INSTANCE

(MARITIME COURT)

2007/92 D. Is

(...)

HELD; The present statement has been signed in common and it has been held

1- To impose precautionary judgment over M/V MY SHIP owned by the opponent party and to arrest the vessel pursuant to the articles 101 etc. of the Code of Civil Procedure and to notify in written the concerned authorities upon a guarantee either in cash or in a letter of guarantee form issued conclusively and for an unlimited period of time in the amount of the 40% of USD 29,000.- is submitted, as in the preliminary expert report submitted, it was stated that there was a shortage of approximately 100 m/t of cargo on the vessel that amounts to USD 29,000-.

2- To grant to the expert 3 days period in order to submit his reports as 3 copies showing the net quantity of the damage after the discharge has been completed,

3- To pay the mentioned amounts to the entitled parties 12.11.2007

| Judge 36575 | Clerk | Court Attendant | Claimant's counsel |
|---|---|---|---|
| Signature | Signature | Signature | Signature |

Opponent Party – Vessel's Master Derya Yilmaz

Signature

A No 281067

Serial Number :7036459-1497318-3-1-8

Correspondence Number: 43947

AKBANK

15.11.2007

TURKISH REPUBLIC

BANDIRMA 1st CIVIL COURT OF FIRST INSTANCE

We, the undersigned, authorized to sign and represent our bank accept, declare and undertake on the account of our Bank that in case the Owners "Sibel Shipping Limited-Malta" deemed to be the unjust party on the file of the Bandirma 1st Civil Court Of First Instance under 2007/92 D.Is file number will be held liable by the Court and provided that our Bank will be notified by your side, our Bank as guarantor will irrevocably and unconditionally pay forthwith and without any delay upon your first written request the amount up to USD 28,500.- (twenty eight thousand and five hundred American dollars) with its interests accrued from the date in which the Bank has been notified of the request until the actual date of payment, without the need to make any protest or take any court decision by your side and guarantying that our Bank and/or the concerned party will not take any legal step.

This Bank Letter of Guarantee is conclusive and valid for an unlimited period of time and in case our bank is not notified by your side of any written compensation request in order to turn the letter into cash wholly or partially, both the Letter of Guarantee and commitment will be null and void.

This letter of guarantee is issued based on the instruction of Goztepe Branch.

Yours sincerely,
AKBANK T.A.S
BANDIRMA BRANCH

Akbank T.A.S
Bandirma Branch

Signature - Stamp

SEMRA BAYRAKTAR — Signature — Authorized 1

OZLEM SENTAS — Signature — Authorized 3

15.11.2007

[illegible]

[illegible]

Hakim : [illegible]
Katip : [illegible] Caver
Tercüman : [illegible] Erol

Tespit isteyen vekilinin [illegible] üzerine [illegible] tespit yapılmasına dair verilen karar gereğince tespit isteyen vekili [illegible] ile birlikte Bandırma Limanı'ndaki [illegible] ait gemi başına gelindi.

Tespit mahallinde tespit isteyen vekili ile gemi kaptanı Derya Yılmaz hazır olarak tespite başlandı.

S. D.: Refakatte getirilen uzakyol kaptanı Murat Gül'ün re'sen bilirkişi olarak seçilmesine karar verildi, tespite açık tespite devam olundu.

KAPTAN BİLİRKİŞİ: MURAT GÜL, Hüseyin oğlu, 1975 D.lu, [illegible] Limanı'nda [illegible] kılavuz kaptan olarak görev yapar, taraflarla tanışıklığı yok, usulen yemin ihtaratı yapıldı.

Tespit isteyen vekilinin yer göstermesi ile Bandırma Limanı'nda [illegible] olarak bulunan M/V [illegible] gemisinin incelenmesinde, geminin tek ambardan oluştuğu, ayçiçeği küspesi yüklemiş olduğu geminin büyük oranda tahliye olmuş, yaklaşık 8-10 ton civarında malın halen gemide bulunduğu, tahliye edilen malın Liman İşletme Müdürlüğü kantarından geçirilerek boşaltılan yükün miktarının tespit olunduğu görüldü.

Tespit isteyen vekilinden soruldu: Tespit dilekçemizi tekrar ediyoruz, dilekçemizde belirttiğimiz üzere müvekkilin alıcısı olduğu yükte 106.317 m/ton (?) [illegible] eksiklik çıkmıştır, bu durumun bilirkişi aracılığı ile tespiti ile geminin [illegible] talep ediyoruz dedi.

Karşı taraf gemi kaptanı Derya Yılmaz, Sami oğlu, 1969 D.lu, gemi kaptanı olarak görev yaptığını söyledi, soruldu:

Tespit yapılmasına bir diyeceğim yoktur, şunu belirtmek gerekir ki alıcı taraf daha Bandırma Limanı'nda draftsorvey yaptırılmamıştır, ben geminin yükleme limanında yaklaşık 106 m/ton eksik yük yüklendiğini yükleyene de bildirdim, ancak orada da işlemler oradaki kantar işlemlerine göre yapıldığı için bu şekilde konşimento düzenlenip buraya gelindi, dedi.

Tespit isteyen vekili söz aldı: Müvekkilin firma konşimentoda yazılan miktar üzerinden ödeme yapmıştır, kaptan yükleme limanındaki yüklenen yük miktarı üzerinden değil de, daha doğrusu oradaki kantar ölçümleri sonucu miktar üzerinden konşimento düzenlenmesi için acentaya yetki vermiştir, müvekkil firmanın acenta ile kaptan arasındaki ilişkiden dolayı sorumlu tutulması düşünülemez, bu durum müvekkili bağlamaz, dedi.

Bilirkişi yukarıda kimliği ve yemin ihtaratı yazılı bilirkişi huzura alındı, soruldu:

Yapacağım işi anladım, geminin boşaltılan yüküne ait Bandırma Liman İşletme Müdürlüğü Kantar çeki listesinde 2.305.950 m/ton yükün tahliye edildiği, konşimentoya göre 2.415.700 m/ton yükün yüklendiği dikkate alındığında 109.750 m/ton eksik yük ortaya çıkmakta olup, 8-10 m/ton yükün halen gemide olduğu düşünülürse yaklaşık 100 m/ton civarında eksiklik söz konusudur, ton değeri 290 ABD.Dolardan yaklaşık 29.000 ABD.Doları zararın ortaya çıktığı söylenebilir, [illegible] kalan yükün boşaltılması sonrasında kantar çeki listesinin dosyaya sunulmasından sonra yazılı olarak mahkemenize bildirecektir dedi. Beyanı okundu, tespite son verildi, imzası alındı.

Kaptan bilirkişi

Te spit isteyen vekilinden so ruldu: Ayapıl an tespite b ir di yece im yokt ur dedi.

Ka rşı taraf ge mi kaptanınd an soruldu: Benimde yapıl an tespite bir diyece ğim yok tu r dedi.

Te spit mahalli nde yapılaca k başka bir i şlem kalmadı ğında te spite son verildi.

G. D.: 1-Bilirk işi tarafında n verilen ön rapora göre karşı tarafa ai t gemide-29-m- 100 m/ton civarında eks iklik bulund uğu ve bununda de ğe rinin 29.000 ABD?Doları olduğu belirt ildi ğinden,29.000 ABD.Dolarının %40'ı oran ında nakit t eminat veya kesin ve süre siz banka mektub u ile karşıl andığından k arşı tarafa ait M/V MY SH IP isimli gemi üzerine HUMK nun 101.ve devamı maddele ri uyarınca ihtiya. ti tedbir ko nularak gemi nin seferden men edilmes ine,bu konud a ilgi li yerlere m üzekkere yaz ılmasına,

2-Bilirk işiye gemi t ahliye edild ikten sonra net zarar miktar ını gösterir raporunu üç nüsha halin de sunmak üz ere 3 günlük sür e verilmesin e,

3-Belirt ilen ücretle rin hak sahi plerine öden mesine karar verile rek buna dair düzenlenen i şbu tutanak birlikte imza altına alındı. 12.11.2007

Hakim 3/6575 Katip Mübaşir Tespit iste yen vekili

Karşı tara f gemi kapta nı
Dery a Yılmaz

1018

**AKBANK**

A No 281067

15/11/2007

Seri No : 7036459-1497318-3-1-8
Muhaberat No : 43947

T.C.
BANDIRMA 1.ASLİYE HUKUK MAHKEMESİ

Bandırma 1. Asliye Hukuk Mahkemesi'nin 2007/92 D.İŞ sayılı dosyasında borçlu bulunan Donatan "Sibel Shipping Limited-Malta" aleyhinde yürütülen mahkemede adı geçenin haksız çıkması halinde Banka'mızın 28.500-(Y/YirmiSekizBinBeşYüzAmerikanDoları) USD'na kadar garanti eden olarak sorumlu olduğunu, tarafınızca Bankamıza yazılı olarak bildirildiği takdirde, Bankamızca veya mükellefçe hiç bir yasal yola gidilmeksizin protesto çekilmesine, hüküm alınmasına gerek kalmaksızın, yukarıda belirtilen meblağı ilk yazılı isteminiz üzerine, hemen ve geciktirilmeksizin, kayıtsız ve şartsız olmak üzere talebin bankamıza ulaştığı tarihten ödeme anına kadar geçecek günler için gecikme zammı ile birlikte ödeyeceğimizi Bankamızın imza yetkilisi ve sorumlusu sıfatıyla ve banka nam ve hesabına yüklendiğimizi kabul, beyan ve taahhüt ederiz.

İş bu teminat mektubu kesin ve süresiz olup, bu süre içerisinde yazılı başvurunuzun Bankamıza ulaşacak şekilde, tarafınızdan kısmen veya tamamen nakde çevrilmesi için tazmin talebinde bulunulmadığı takdirde mektubumuz ve taahhüdümüz hükümsüz kalacaktır.

İş bu teminat mektubu Göztepe Şubesi talimatına istinaden düzenlenmiştir.

Derin Saygılarımızla,

**A K B A N K T.A.Ş.**

BANDIRMA ŞUBESİ

Bandırma Şubesi

SEMRA BAYRAKTAR ÖZLEM ŞENTAŞ
YET.1 YET.3

Teminat mektubu aslı alındı 15.11.2007
Katip [illegible]

**Kesin**

6119-04/2005 [257]

Teminat Mektubu Kağıdıdır.

# EXHIBIT "B"

**George M. Chalos**

**From:**    George M. Chalos
**Sent:**    Monday, February 11, 2008 10:10 AM
**To:**    'pskoufalos@browngavalas.com'
**Cc:**    George K. Kontakis
**Subject:** Sibel Shipping LTD v. Kulberg Finances, et. al.

*WITHOUT PREJUDICE – For Settlement Purposes Only*

Re:    Sibel Shipping LTD v. Kulberg Finances, et. al.
       M/V MY SHIP
       07 cv 11216 (LAK)
       CO&D ref:  500474.0001

Dear Peter:

Further to our recent exchanges on this matter, I have been advised that our client is amenable to amicably concluding this matter on the following terms:

1.  Kulberg to settle the court case with Cargo Receivers together with legal costs payable to cargo receivers' lawyers or to take over the court case by putting up security (instead of the one the our client provided) in the form of bank letter of guarantee in order to defend shortage claim;
2.  Kulberg to communicate with the discharge port agent and pay the custom fine;
3.  Kulberg to pay USD 44,691.50 to the Clients covering following losses:
    -  Loss of earning claim of USD 31,500 (9 days x USD 31,500)
    -  Cost of bank guarantee USD 1,500
    -  Legal cost of defending Turkish proceedings USD 5,500
    -  Legal cost of US proceedings USD 6,191.50 plus the costs until the settlement date (please note your new invoice is being processed by the Clients)

I am travelling today, but expect to be back in the office tomorrow and look forward to your client's acceptance to the foregoing by return.

Brgds/George

George M. Chalos
CHALOS, O'CONNOR & DUFFY, LLP

Please visit our website at: www.codus-law.com

# EXHIBIT
# "C"

**George M. Chalos**

**From:** Peter Skoufalos [pskoufalos@browngavalas.com]
**Sent:** Wednesday, March 05, 2008 4:32 PM
**To:** George M. Chalos
**Cc:** 'Patrick R. O'Mea'
**Subject:** Sibel Shipping v. Kulberg Finances, 07 Civ. 11216 (LAK) [ORef.: 1605.0001]

George,

Your emails of February 5 and 11, 2008 break down plaintiff's damages as follows: 1) the cargo receiver's claim ($29,000.00); 2) the custom fine ($9,000), and 3) other sums claimed by Sibel for alleged losses ($44,691.50).

Therefore, your principal claim is: $29,000 + $9,000 + $44,691.50 = $82,691.50

Percent of principal claim attributable to the cargo claim: $29,000 / $82,691.50 = 35.0701%

Costs and interest: $142,500 - $82,691.50 = $59,808.50

Percent of costs and interests attributable to cargo claim: $59,808.50 x 35.0701% = $20,974.90

Total damages attributable to cargo claim = $49,974.90 ($29,000 + $20,974.90)

Thus, the attachment should immediately be reduced in the amount of approx. $50,000.00.

Regards,

Peter Skoufalos
Brown Gavalas & Fromm LLP
355 Lexington Avenue, 4th Floor
New York, New York 10017-6603

Tel.: 212 983-8500
Fax: 212 983-5946
Mob.: 917 686-3600

pskoufalos@browngavalas.com
www.browngavalas.com

This electronic mail transmission contains information from the law firm of Brown Gavalas & Fromm LLP, which may be privileged or confidential. The information contained herein is for the exclusive use of the addressee named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this information is prohibited. If you have received this electronic mail transmission in error, please notify us by telephone (212 983-8500) or by electronic mail.

# EXHIBIT
# "D"

**George M. Chalos**

**From:**   George M. Chalos
**Sent:**   Tuesday, March 11, 2008 3:39 PM
**To:**     'pskoufalos@browngavalas.com'
**Cc:**     George K. Kontakis
**Subject:** Sibel Shipping LTD v. Kulberg Finances

## Without Prejudice - For Settlement Purposes

Re:     Sibel Shipping LTD v. Kulberg Finances
        M/V MY SHIP
        07 cv 11216 (LAK)
        Your Ref:  1605.0001
        CO&D Ref:  500474.0001

Good afternoon Peter:

Further to our various discussions and exchanges regarding the above referenced matter, we write to provide you with some additional comments and our client's proposal to settle this matter.

First, with respect to Kulberg's counterclaim, our clients, Sibel Shipping, do not agree with the assertions presented by Kulberg. As you will note, the counterclaim you filed (as part of Kulberg's Answer) alleges that the owners, Sibel  are responsible for the loadport discrepancies in the cargo quantities. However, reference to the Charter Party between Kulberg and Sibel will clearly show that one of the specifically agreed terms of the C/P was that "owners are not responsible for cargo qtty". In light of this clear and unambiguous provision, Kulberg can not, in good faith, assert that Sibel has any liability for the cargo quantity discrepancies whatsoever. Additionally, and despite Kulberg's assertions that it protested the discrepancies, Kulberg is fully aware that the Master of the M/V MY SHIP presented two Letters of Protest at load port specifically regarding these cargo discrepancy figures. Thereafter, an LOI was issued to the owners of the M/V MY SHIP holding them harmless for any consequences arising out of the cargo discrepancies (this is in addition to the provision contained in the charter party agreement between Sibel and Kulberg). As such, Sibel does not believe Kulberg has a good faith basis upon which to assert this counterclaim and must deny it outright.

In the meantime, and in an effort to avoid further costs and legal expenses in this matter for both parties, (which, in my view, are beginning to outweigh the benefit of either party further pursuing these claims), we have obtained authority from our client, on a without prejudice basis, to reach an amicable settlement of this matter on the following terms:

1.      On November 9, 2007, the receivers stopped discharging the cargo because of the cargo shortage. As a result, the vessel was thereafter arrested on November 12, 2007, and the arrest was not lifted until November 15, 2007. Additionally, and as a further result of the arrest, owners could not finalize any subsequent fixture of the vessel (as her availability was unknown) and therefore owners suffered three (3) days without a fixture/employment for the vessel. Therefore the total time lost by the

owners was nine (9) days. Provided Kulberg is agreeable to the remainder of the terms of this settlement offer, the owners are willing to accept US$28,000 for this portion of their claim.

2. Sibel is also willing to accept US$842.50 for the expenses incurred as a result of the bank letter of guarantee (support for these fees can be provided by the bank if necessary).

3. Sibel is also willing to accept US$2,645 for attorneys fees incurred, which is based upon, and in accordance with, the applicable regulations prepared by the Union of Bar Associations of Turkey, entitled "Minimum Attorneyship Fee Tariff." As you will appreciate, the attorneys fees incurred to date in this matter far exceed the proposed settlement sum of US$2,645 for attorneys fees.

4. Finally, the owners have received notification from the discharge port agent that a customs fine is pending. This customs fine is for Kulberg's account. Additionally, the agent at the discharge port was Kulberg's appointed agent. In light of the foregoing, Sibel believes,this claim should be handled by Kulberg directly with its agent in at the discharge port of Bandirma. Furthermore, should the terms of this settlement agreement be acceptable to Kulberg, Sibel will continue to hold US$10,000 as security for the customs fine, until such time as Kulberg has settled same.

In summary, Sibel proposes to settle these claims in the total amount of US$31,487.50, plus US$10,000 in security for the pending customs claim, as well as the dismissal of Kulberg's counterclaim against Sibel. Again, this settlement is made without prejudice to any of Sibel's rights or defenses.

We look forward to speaking with you once you have had an opportunity to consider the foregoing with your client(s).

In the meantime, and as always, I remain,

Sincerely yours/George

George M. Chalos
CHALOS, O'CONNOR & DUFFY, LLP

Please visit our website at: www.codus-law.com

# EXHIBIT
# "E"

**George M. Chalos**

**From:**  George K. Kontakis
**Sent:**  Wednesday, March 12, 2008 10:56 AM
**To:**  'Kevin McGee'
**Cc:**  'CBuchholz@rawle.com'; 'LPhiliposian@rawle.com'; 'KManyin@rawle.com'; George M. Chalos
**Subject:** Sibel Shipping Ltd. v. Kulberg Finances, et al. - 07 CV 11216 (LAK)

Re:      Sibel Shipping Ltd. v. Kulberg Finances, et al.
         07 CV 11216 (LAK)
         CO&D Ref: 500474.0001

Dear Kevin:

We write in connection with the above referenced matter and further to our previous discussions regarding same. In this regard, we kindly instruct Bank of New York Mellon to reduce the amount presently under restraint by the amount of US$47,500. As Bank of New York Mellon is presently holding US$142,500, in accordance with the PMAG in this matter, the amount that will continue to be held by Bank of New York Mellon after the release of the above mentioned funds will be US$95,000 (i.e. 142,500 – 47,500 = 95,000). The US$47,500 should be released according to the original wire transfer instructions and therefore the funds will be sent to Kulberg Finances Inc.

Should you have any questions or concerns, please feel free to contact us. In the meantime, thanking you for your continued assistance with these matters, we remain,

Sincerely yours,

**George K. Kontakis**

CHALOS, O'CONNOR & DUFFY, LLP
366 Main Street
Port Washington, New York 11050
Tel: 516-767-3600
Fax: 516-767-3605
Mobile: 516-528-9447

Please visit our website: www.codus-law.com

# EXHIBIT
# "F"

*M/V Mayship acc Kulberg CP DATED 18.10.07*

# FIXING NOTE

Mv Myship
Flag Slovak
Dwat 3120 mts on 5.745 mt draft
1983 built, sid
grt / nrt 1998 / 1075
1/1 ho/ha
gr / bl 144006.9 FT3/ 138246.6 FT3
l/b/d 77 /13 / 6.5 m
ho dims : 45.56 x 11.29 x 8.07 m
ha dims: 44.20 x 1018 x 2.58 m
gearless
All abt wog


FOR:
-SUB STEM/SHPRS/RECEIVERS APPROVAL - ALL IN ORDER, VESSEL FIXED CLEAN AND
FULLY
-ACCT: KULBERG FINANCES INC., 15 EAST NORTH STREET IN THE CITY OF DOVER,
COUNTY OF KENT, DE 19901, USA. DIRECTOR MR. SHANE MICHAEL SMITH
- UP TO FCC VSL'S CAP IN CHOPT OF SFS MEAL STW ABT 62'
-NO APPENDIX B REQUIRED
-LOADING: MARIUPOL
-DISCHARGING: BANDIRMA
-1 GSPB AAAA BENDS
-L/C: 23-26 OCT 2007
-L/D 5 TTL DS OF 24 CONSEC HOURS SSHEX EIU BE FRIDAY OR DAY PRECEEDING
HOLIDAY 1700/MONDAY OR FIRST WORKING DAY AFTER HOLIDAY 0800
-UPON LOADING VSL'S HOLDS MUST BE DRY, CLEAN, FREE FROM INSECTS
-BEFORE LOADING HOLDS MUST BE ACCEPTED BY STATE GRAIN INSPECTION. IN CASE OF
BAD RESULT THEN TIME/EXP FOR DRYING/CLEANING TO BE FOR OWS ACCNT, NOT TO
COUNT AS LAYTIME
-CARGO QUANTITY TO BE DETERMINED BY DRAFT SURVEY FOR CHRTR'S TIME/ACCOUNT.
TIME FOR DRAFT SURVEY TO COUNT AS LTIME. TIME FOR WAITING DRAFT SURVEY TO
COUNT AS LAYTIME. TIME FOR PUMPING OUT BALLAST, NESSESARY FOR DRAFT SURVEY
NOT TO COUNT
-OWNERS ARE NOT RESPONSIBLE FOR CARGO QTTY
-FRT USD 70 000 L'SUM BSS 1/1, FIO SPOUT/GRAB TRIMMED BSS DISCH AT BANDIRMA
-FRT PAYABLE: 100 PCT LESS COMMISIONS ONLY W/I 2 BDAYS AFTER S/RELEASING BS/L
MARKED 'FRT PAYABLE AS PER C/P' TO OWNERS' OR MANAGERS NOMINATED BANK ACCT IN
USD CURRENCY
-SHOULD CHRTRS REQUIRE 'FREIGHT PREPAID' BS/L SAME TO REMAIN AT AGENT CUSTODY
TILL OWNERS RECEIVE FULL FRT ON THEIR ACCOUNT
-SHIFTING TO SECOND LOAD/DISCH BERTH/BARGE IF ANY, TO BE FOR CHRTRS ACCOUNT
AND TIME BE
-FREIGHT DEEMED EARNED ON SIGNING B/L DISCOUNTLESS AND NONRETURNABLE SHIP
AND/OR CARGO LOST OR NOT LOST
-NOR CONSIDERED TO BE VALID IF GIVEN DURING LAYCAN, LOCAL WORKINGDAYS/OFFICE
HOURS, W/W/W/W EVEN BY VHF/RADIO/TLX/PHONE/CABLE/FAX
-LAYTIME TO COUNT 08:00 AM / 14:00 PM BE
-DEMM USD 3000 PDPR/FD BENDS
-ONCE ON DEMURRAGE, ALWAYS ON DEMURRAGE
-MASTER HAS THE RIGHT TO REJECT ANY UNSOUND/DAMAGED CARGO, CHARTERERS TO BE
RESPONSIBLE FOR REPLACEMENT OF CARGO FOUND UNSOUND AND ALL TIME USED FOR IT
TO COUNT AS LAYTIME
-SHORE/FLOATING CRANES FOR BOTH LOAD AND DISCH OPERATIONS TO BE FOR
SHIPPERS/RCVRS/CHRTS TIME/ACCOUNT BENDS
-CGO ANALYSIS, IF ANY, TO BE FOR CHRTRS ACCOUNT AND ALL WAITING TIME TO COUNT
AS LAYTIME BE
-CHABE.

*M/V Mayship acc Kulberg CP DATED 18.10.07*

LOADPORT: CHRTRS AGENT
KONCAR SHIPPING AGENCY-MARIUPOL'
PERSON IN CHARGE - MR.SERGEY PODDUDA
TEL/FAX: +38 0629 41-71-34
MOB. :   +38 067 621-37-88
MOB. :   +38 095 5262018
E-mail: koncars@gmail.com


DISCHPORT - TBN SUB D/A PROF
-FUMIGATION, IF ANY, FOR CHRTS ACCT INCL TIME  LOST
-TAXES/DUES ON CARGO/FRT TO BE FOR CHARTERERS ACCOUNT
-TAXES/DUES ON VESSEL/FLAG/CREW TO BE FOR OWNERS' ACCOUNT
-EXINS DUE TO VSL'S AGE,  IF ANY, TO BE FOR CHRS ACCOUNT
-GA/ARBITRATION IN LONDON, ENGLISH LAW TO APPLY
-O'W AS PER CLEAN GCN 94 WITH LOGICALLY AMENDMENTS AS PER MAIN TERMS AGREED
-COMM 3.75 PCT
END

CHARTER PARTY

KULBERG.

COUNTY OF

FOR

LAYTIME.

UNICOR ULUSLARARASI
DIŞ TİC.ve NAK. LTD. ŞTİ.
Gökay Cad
ISTANBUL

[illegible] AND TIME

[illegible] AND [illegible]

[illegible] OFFICE HOURS.

[illegible]

[illegible] TO COUNT

[illegible] COUNT AS

[illegible]

[illegible] AGREED

UNICOR ULUSLARARASI
DIŞ TİC. ve NAK. LTD. ŞTİ.
[illegible] Gökay Cad.
[illegible] KADIKÖY-İSTANBUL

# EXHIBIT
# "G"

Cargo : Sunflower Meal in bulk

To : Koncar Shipping Agency
To : ATEK (Shipper)
Cc : Unicor Ltd. İstanbul
Cc : Install (Shippers)

Re : Ship – Shore Difference

# PROTEST LETTER

Dear Sirs,

With reference to the cargo of Sunflower meal in bulk loaded on board the M/V My Ship at Mariupol on 29th October, 2007. I , master , hereby note protest with you regarding the quantity of cargo loaded on board the above named vessel.

| | | |
|---|---|---|
| Ship's draft surveyor report | : | 2309,083 M/Tonnes |
| Draft surveyor report | : | 2316,451 M/Tonnes |
| Shore figures | : | 2415,700 M/Tonnes |

The ship's figures being 106,617 M/Tonnes less than the shore figures.

I , hereby reserve the right of our Owners / Charterers / Operators to take such action as is deemed necessary to ascertain the quantity loaded.

Yours faithfully ,

Signature M/V MY SH... Register: Bratislava Register No 961

Capt. Derya YILMAZ
Master of M/V My Ship

Received by : As Agents only
On behalf of

Cargo : Sunflower Meal in bulk

To : Koncar Shipping Agency
To : ATEK (Shippers)
Cc : Unicor Ltd. İstanbul
Cc : Install (Shippers)

# LETTER OF PROTEST

Subject:Excessive cargo difference

The cargo quantities as gauged on board the M/V My Ship are computed o the basis of ullage taken on completion of loading at Mariupol on 29^rd October, 2007.

When compared with cargo quantities based on shore figures ( B/L figures it indicates an apparent excessive cargo difference. On completion of discharge, a comparison will be made of the cargo quantities with the Bill of Lading issued at Bandırma/Turkey on 3-5th Novamber, 2007.

If this comparison confirm the indicated excessive difference, we serve notice that we hold you, as cargo supplier, responsible for all costs and expenses arisi from this incident, including possible customs fines and fines imposed upon vessel as a direct consequence of the discrepancy.

As this discrepancy is not due to any known inaccuracy in ships calibrati tables the Bill of Lading figures are to be considered as signed under protest.

Please note this letter is in lieu of the clausing by me of Bill of Lading in respect of the afore-mentioned difference. It is my understanding that this procedure of such difference, this letter shall regard by you as evidence of quantity in dispute ju as if the same had been endorsed in the Bill of Lading.

Ship cargo figures : 2309,083 M/Tonnes
Bill of Lading figures : 2415,700 M/Tonnes

Difference ship under : 106,617 M/Tonnes

Yours faithfully,

Signature

Capt. Derya YILMAZ
Master of M/V My Ship

Port Of Register: Bra...
Register No: 851

Received by : A. Akonzanu
On behalf of

# EXHIBIT "H"

[illegible] SHIPPER AGROSERVICE [illegible] DONETSK [illegible] BEHALF OF INTER [illegible] YEM SAN VE [illegible] KULBERG FINANCE [illegible] STREET IN THE [illegible] TRY OF KENT, DE [illegible] 2,309,083 MTS. [illegible] SHORE [illegible]

[illegible] THE [illegible]

[illegible] SIDERED AS [illegible] PORT AND [illegible] TE MIGTH [illegible] WILL NOT BE [illegible]

[illegible] TO [illegible] PURPOSES

[illegible] AND [illegible] ANY [illegible]

[illegible] LAND [illegible] DOCUMENTS

TO: THE OWNE[illegible]

SHIP [illegible]

VOYAGE [illegible] SAMSUN [illegible] TURKEY

CARGO [illegible]

B/L NO [illegible]

C/P DATED [illegible]

DEAR SIRS,

AS KNOWN [illegible] INFORM SHIPPER "AGROSERVICE [illegible] UKRAINE [illegible] "UKRAGROIMPEX". LTD UKRAINE [illegible] OFFICES [illegible] ON BEHALF [illegible] ORDER NOTIFY "ONALLAR YE[illegible] KEMAL [illegible] TURKEY, CHARTERERS [illegible] NORTH STREET IN THE CITY OF DOVER, COUN[illegible] AS PER MASTER'S FIGURE THE QUANTITY [illegible] THE SHIPPERS STEVEDORS FIGURE THE QTTY ACCORD[illegible] 15,700 MTS.

THE SHIPPERS [illegible] MASTER [illegible] SIGN THE BS/L WHICH AL[illegible] IN THIS RESPECT [illegible] VESSEL [illegible] CONSIDERED AS RESPONSIBLE [illegible] DISCHARGE PORT AND HEREBY INTO [illegible] THE DISPUTE MIGTH ARISE IN RESPECT [illegible] PORT OWNERS WILL NOT BE HELD RESPON[illegible]

IN CASE [illegible] SHIPPER'S TO ARRANGE ISS[illegible] CUSTOM PURPOSES BY THE CRTER[illegible] SHIPPERS GRTEE AND CONFIRM THAT [illegible] FOR ANY SHORTAGE [illegible] HARMLESS AND RESPONSIB[illegible]

ATTACHED [illegible] THIS L.O.I. AND SHIPPER'S AN[illegible] THESE BOTH DOCUMENTS

YOURS SINCE[illegible]

SHIPPER'S
AGROSERVICE L[illegible]

CHARTERERS

SHIPPER'S
UKRAGROIMPEX [illegible]