BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
KULBERG FINANCES, INC.
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SIBEL SHIPPING LTD.,

            Plaintiff,

    -v-

KULBERG FINANCES, INC., AGROSERVICE
LTD., UKRAGROIMPEX LTD., and
INTERBULK TRADE LLC,

            Defendants.
-----------------------------------------------------------X

    07 Civ. 11216 (LAK)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO VACATE OR REDUCE MARITIME ATTACHMENT AND TO COMPEL PLAINTIFF TO PROVIDE COUNTERSECURITY

### Introduction

Defendant Kulberg Finances, Inc. ("Defendant" or "Kulberg"), submits this memorandum of law in reply to the opposition submission of plaintiff Sibel Shipping Ltd. ("Plaintiff"). Kulberg respectfully submits that Plaintiff, by failing to produce any evidence of its claim, has not met the burden of proof required to uphold the attachment under Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure.

    The attachment in this case must be vacated or reduced because the Plaintiff has failed to provide documentary support for any of its claims. Defendant is also entitled to countersecurity because it has pled a *prima facie* counterclaim against Plaintiff in its Answer.

Plaintiff's opposition attempts to sidestep entirely the substantial burden Plaintiff faces under Rule E, and instead argues about irrelevant pleading standards. Plaintiff's remaining response to the motion to vacate or reduce consists of legal conclusions without a basis in the facts of this case. For example, Plaintiff argues that it has pled a *prima facie* maritime claim, but fails to show that it suffered any damages from that claim, and also attempts to impermissibly shift the burden onto Defendant to show that the attachment is appropriate. Moreover, Plaintiff's opposition submission fails to address Defendant's arguments by distinguishing the cases cited in Defendant's opening brief or providing any evidentiary basis for the damages it allegedly suffered.

On this record, the attachment should be reduced to zero dollars because Plaintiff has not produced evidence that it has, or is likely to, sustain any damages. Additionally, Defendant should be granted the countersecurity to which it is entitled.

Also submitted in reply to Plaintiff's opposition is the Second Declaration of Oleg Khaladzhy, dated July 7, 2008 ("2nd Khaladzhy Decl.").

## POINT I

### POINTS I, II, AND IV OF PLAINTIFF'S OPPOSITION ARE IRRELEVANT BECAUSE DEFENDANT CANNOT RELY MERELY ON ITS PLEADINGS TO SATISFY ITS RULE E(4) BURDEN

Plaintiff uses the bulk of its brief arguing that it meets its burden under *Aqua Stoli Shipping Ltd. v. Gardner Smith Pte. Ltd.*, 460 F.3d 434 (2d Cir. 2006), by pleading a valid prima facie maritime claim. This argument is irrelevant and does not respond to the issues raised in Defendant's motion. Defendant requests vacatur or reduction of the maritime attachment because, even if Plaintiff meets the minimal burden of pleading a *prima facie* maritime claim,

2

Plaintiff fails to provide any documentary evidence showing that it suffered or will suffer damages from that claim. Plaintiff bears the burden to show why the attachment should not be vacated or reduced under Rules E(4) and E(6).

Plaintiff's first point merely lays out the *prima facie* pleading standard that must be met to support a Rule B action in the Southern District of New York. Plaintiff's second point is a restatement of its first, cast in the negative. That is, Plaintiff argues that Defendant cannot show that Plaintiff did not plead a *prima facie* maritime case. Accordingly, Plaintiff advances its argument no further here than it did in the first point. Moreover, because Mr. Khaladzhy has, in his two Declarations on behalf of Defendant, disputed both the existence and quantum of Plaintiff's remaining claims, Plaintiff cannot just rest on its pleadings to meet its Rule E burden.

In Point IV, Plaintiff seeks leave to amend its Complaint if the Court finds it fails to plead its claim sufficiently. However, no amendment can remedy the deficiencies from which the Plaintiff suffers. The deficiency in Plaintiff's claim arises from its inability to show that it actually incurred the damages for which it attaches Defendant's funds.

Plaintiff has had ample opportunity to produce evidence of its alleged claim. Furthermore, Kulberg requested documentary evidence of Plaintiff's damages on numerous occasions. [1st Skoufalos Aff. ¶ 7, Ex. "E"]. Nevertheless, Plaintiff has failed to produce a single invoice, receipt, or other document supporting the claimed damages and attachment. An amendment of the Complaint will not alter the basic fact that the Plaintiff's claims at this point are without any support or foundation.

The Court should disregard Plaintiff's first, second, and fourth points because they do not support Plaintiff's contention that the attachment should be maintained.

3

## POINT II

## PLAINTIFF FAILS TO MEET ITS BURDEN OF DEMONSTRATING WHY THE ATTACHMENT SHOULD NOT BE VACATED OR REDUCED

In its opening brief, Defendant provided a legal and factual basis to reduce the attachment. Plaintiff's response, contained in the third point of its opposition, is an assortment of incorrect assertions and unsubstantiated arguments. Plaintiff does not provide a single case showing why reduction is inappropriate, nor does it attempt to distinguish the facts of this case from those of the cases Defendant cites. Plaintiff has not meet its burden "to show why the arrest or attachment should not be vacated." *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, 05 Civ. 7173, 2005 U.S. Dist. LEXIS 22409, at *3 (S.D.N.Y. Oct. 3, 2005).

*a.*    **The Court will not Analyze the Merits of the Underlying Dispute**

In Point III, Plaintiff argues, without citing any legal authority, that the Court impermissibly engages the merits of the underlying claim by requiring proof of Plaintiff's actual or expected damages. This argument is simply incorrect. Courts evaluating motions to reduce an attachment routinely require evidentiary support for the amount of the attachment. *See Daeshin*, at *4-6 (reducing attachment above amount for which defendant "provided sufficient evidence"); *Rice Co. v. Express Sea Transp. Corp.*, 07 Civ. 7077, 2007 U.S. Dist. LEXIS 84300, at *8 (S.D.N.Y. Nov. 15, 2007) ("Courts have reduced the damages where the plaintiff has offered no evidence to support its claim"); *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235, 238 (S.D.N.Y. 1996) (considering plaintiff's damages in order to reduce attachment).

Elsewhere in its opposition, Plaintiff acknowledges that the merits of the claim are not in issue, but only the "quantum of the attachment." (Pl.'s Opp. 4). Even here, Plaintiff acknowledges the scope of Defendant's argument: "that the amount of Plaintiff's claim, and

subsequent ex parte Rule B attachment application, is overstated." (Pl.'s Opp. 6). Defendant's request to reduce the attachment is plainly not a request that this Court engage the merits of Plaintiff's case. However, Plaintiff's raw calculations, offered without so much as an invoice or receipt to substantiate them, do not amount to "information concerning the factual basis, as well as the documentary support, for Plaintiff's claims." (Pl.'s Opp. 6).[1]

Furthermore, Plaintiff's own best calculation of its costs does not support the continued attachment of $95,000.00. Plaintiff asserts that "USD 95,000 . . . is well within what the Rule B and Rule E allow." (Pl.'s Opp. 8). However, Plaintiff admits that its claim only amounts to $39,487.00, with an additional $40,000.00 for legal costs and fees for London arbitration and U.S. proceedings[2]. Therefore, Plaintiff's total claim is only **$79,487.00** - $15,000.00 less than the amount currently under attachment.

Plaintiff justifies the continued restraint of Kulberg's property by arguing that the Court has the discretion to grant security up to twice the amount of Plaintiff's claim. This is disingenuous in the extreme, as this Court denied Plaintiff's previous request for an attachment greater than its alleged damages. As the Court is aware, Plaintiff's original proposed *ex parte* order requested an attachment of $285,000.00. However, the Court modified the Plaintiff's request and authorized an attachment only up to the amount of $142,500.00. (*See* Def.'s Memo. 1; 1st Skoufalos Aff. Ex. "A"). Plaintiff is not now in any better position to argue to this Court that Plaintiff is entitled to attach twice the amount of its stated claim.

---

[1] Plaintiff's counsel has not provided any affidavit from Plaintiff itself or Plaintiff's Turkish counsel in support of its claim. Therefore, the attachment of Defendant's funds, at this point, is predicated on nothing more than the unsubstantiated assertions of counsel.

[2] Mr. Khaladzhy, on behalf of Kulberg, notes that Plaintiff has taken no steps to commence London arbitration proceedings—even though Plaintiff attached $40,000.00 specifically to secure legal costs for such proceedings. [1st Khaladzhy Decl. ¶4; 2nd Khaladzhy Decl. ¶18]

*b.*     **The Khaladzhy Declaration is entitled to Full Recognition by this Court**

Defendant attempts to shift the Court's attention from its own evidentiary deficiencies by arguing that the declaration of Oleg Khaladzhy, a trader and chartering manager for Kulberg, should be ignored. Here again, Plaintiff's arguments are misguided and, in parts, misleading.

As an initial matter, declarations of foreign witnesses are commonly submitted in the context of motions pursuant to Supplemental E(4) in which the plaintiff must show why the attachment should not be vacated. In this case, Mr. Khaladzhy has produced a Power of Attorney in his favor from Shane Michael Smith, a Director of Kulberg, expressly authorizing Mr. Khaladzhy to act for Kulberg in litigation [1st Khaladzhy Decl. ¶2, Ex. "A"]; has produced a Fixing Note agreement between the parties in which Mr. Smith is specifically identified as a representative of Kulberg [1st Khaladzhy Decl. ¶7, Ex. "B"; 2nd Khaladzhy Decl. ¶ 6]; has produced documents generated contemporaneously with the voyage at issue [1st Khaladzhy Decl. ¶8, Ex. "C"]; has instructed attorneys in New York and in Ukraine (Plaintiff concedes the latter is already in discussions with Plaintiff's Turkish representative) [2nd Khaladzhy Decl. ¶7] ; and has submitted two declarations, under penalty of perjury, in which he states personal knowledge of the relevant events.

Moreover, Plaintiff's opposition submissions do not actually question the truth of what Mr. Khaladzhy states in his first Declaration dated May 29, 2008. Nor does Plaintiff question the authenticity of the documents appended to the 1st Khaladzhy Declaration dated May 29, 2008, including the Statement of Facts generated at the load port [1st Khaladzhy Decl. ¶16, Ex. "E"].[3]

---

[3] The Statement of Facts belies the Plaintiff's claim that the vessel was unable to conduct its normal cargo operations and lost future earnings because it was detained in Turkey by the cargo receivers.

6

Nor is compliance with Rule 902(3) required in order for the Court to give consideration and weight to either the First or Second Khaladzhy Declaration. Rather, the Court may authenticate the document under Rule 901(a), upon "evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a).[4]

Plaintiff also states that there are allegedly "inconsistencies and chronological anomalies which compel this court to disregard the Khaladzhy affidavit." (Pl.'s Opp. 11). Specifically, Plaintiff argues that the "Director of the Delaware corporation, Kulberg, signed and executed the document in Cyprus" (emphasis omitted). However, this can hardly constitute a ground for disregarding Mr. Khaladzhy's Declaration, as the place where the Power of Attorney was signed has no bearing on the actual authority bestowed on Mr. Khaladzhy. The director of a Delaware corporation may legally sign documents in Cyprus, and Plaintiff provides no evidence to the contrary.

Plaintiff also attempts to make an issue over the date of the apostille affixed to the Power of Attorney given to Mr. Khaladzhy. Since an apostille is not generally executed contemporaneously with the underlying document, a delay between the document's execution and the apostille is expected. This "chronological anomaly" is nothing more than Plaintiff's attempt to make an issue where none exists.

Next, Plaintiff argues that the Khaladzhy Declaration is "out of time" because the events at issue occurred before the date of the Power of Attorney given to Mr. Khaladzhy. Mr.

---

[4] Plaintiff's reliance on Rule 902(3) is misplaced since Plaintiff does not establish that a declaration submitted in U.S. federal court is a "foreign public document". *Pace Shipping Servs. Network v. M/V OCEAN D*, No. 00-0475, 2003 U.S. Dist. LEXIS 5234 (Mar. 28, 2003), relied on by Plaintiff, is distinguishable because it involved foreign pleadings—clearly public documents. Aside from *BS Sun Shipping Monrovia v. Citgo Petrol. Corp.*, 509 F. Supp. 2d 334 (S.D.N.Y. 2007), research uncovered no instance where a court considering a Rule B motion required an affidavit to be self-authenticated, despite the fact that foreign citizens regularly submit affidavits and declarations in these actions. Moreover, the *BS Sun* court does not explain why the affidavit could not be admitted pursuant to Rule 901(a). Finally, it appears that the court had concerns about the authenticity of the affidavit at issue. *BS Sun*, 345 n.28.

7

Khaladzhy, in his second Declaration, declares Plaintiff's speculation to be specious and readily explains the dates affixed to the Power of Attorney:

> The Power of Attorney given to me in January 2008, only 2 months after the claimed shortage incident in Turkey, was for the specific purpose of acting for the company in any court proceedings related to that incident. The fact that a Power of Attorney was given to me in January 2008, does not rule out that I was acting for the company in my capacity as a trader and chartering person in relation to this voyage in November 2007, and that I have first hand and personal knowledge of this incident.

2nd Khaladzhy Decl. ¶ 5]

Plaintiff's reference to *Nippon Fire & Marine Ins. Co. v. M/V Tourcoing*, 979 F. Supp. 2d 206 (S.D.N.Y. 1997), is an improper attempt to shift the burden of proof for maintaining the attachment onto Defendant. In *Nippon Fire*, the defendant moved for summary judgment and therefore bore the burden of proof. The defendant failed to submit admissible evidence and therefore did not meet its burden. Here, however, Plaintiff bears the burden of showing why the attachment should not be vacated or reduced. (*See* Def.'s Memo. Point I). The Defendant need only show "good cause" to reduce the attachment, and the "district court may determine what 'good cause' is." *Transportes Navieros y Terrestes S.A. de D.V. v. Fairmount Heavy Transport N.V.*, 07 Civ. 3076, 2007 U.S. Dist. LEXIS 50260, at *13 (S.D.N.Y. July 6, 2007). Thereafter, Plaintiff has the burden to provide evidence for its claimed damages. *Daeshin*, at *3.

### c.   **Reduction is appropriate**

Plaintiff finally argues that the Khaladzhy Declaration is of no value to the Court because the merits of the dispute are to be decided in London arbitration. This argument misconstrues the law on reduction of attachments, as courts in this District frequently require evidence to substantiate the quantum of a maritime attachment without adjudicating the "merits" of the claim. *See supra*, Point IIa.

Because Plaintiff fails to provide any evidence to support the quantum of the attachment, and because Plaintiff points to no authority justifying its failure to do so, the attachment in this matter should be vacated or reduced to zero.

## POINT III

### PLAINTIFF HAS FAILED TO SHOW WHY KULBERG'S REQUEST FOR COUNTERSECURITY SHOULD NOT BE GRANTED

Plaintiff has not raised any credible argument for denying Kulberg countersecurity for its counterclaim, as provided by Supplemental Rule E(7).

While Rule E(7) contains mandatory language, the trial court possesses "broad discretion in deciding whether to order counter-security." *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995). However, a principal concern of the district court is "to place the parties on an equality as regards to security." *Titan Navigation Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987) (quoting *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 683-639) (1924)).

Mr. Khaladzhy, who has personal knowledge of the events surrounding the voyage at issue, has described Kulberg's counterclaim against Plaintiff in both of his Declarations. Specifically, Kulberg claims that Plaintiff's refusal to conduct an inquiry at the load port once a discrepancy materialized between a draft survey and shore side measurement resulted in a claim against Kulberg by the cargo receivers that Kulberg was required to, and did, pay. [1st Khaladzhy Decl. ¶¶7-12; 2nd Khaladzhy Decl. ¶¶14-17]. While this claim will ultimately be decided in London arbitration, there is no basis for denying Kulberg countersecurity under Rule E(7) and placing the parties on an equal footing.

Finally, Defendant respectfully submits that Plaintiff's attachment should be vacated if Plaintiff fails to post countersecurity for Kulberg's counterclaims. *See Verton Navigation, Inc. v. Caribica Shipping, Ltd.* 90 Civ. 6940, 1992 U.S. Dist. LEXIS 517 (S.D.N.Y. Jan. 22, 1992) (vacating attachment because plaintiff refused to post countersecurity).

### Conclusion

For these reasons, Defendant respectfully asks the Court to grant its motion to vacate or reduce the order of maritime attachment, and to compel Plaintiff to provide countersecurity.

Dated: New York, New York
July 7, 2008

BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
KULBERG FINANCES, INC.

Peter Skoufalos (PS-0105)
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946